## HENDERSON COUNTY v. J. A. SHOOK.

STATUTES CONSTRUED—PREEMPTOR—SCHOOL LAND.—Four leagues
of school land were surveyed for Henderson county in December,
1856, and the survey recorded in the county in which the land was
situate; the field-notes were not returned to the general land of-
fice until May 27, 1874; the patent issued March 8, 1875. B settled
on the land as a preëmptor in July, 1873. In September, 1875, he
brought an action of trespass to try title against Henderson county
for one hundred and sixty acres of the land : *Held,* That the patent
passed the title, and the land was not subject to preëmption.

ERROR from Jack. Tried below before the Hon. J. N.
Roach, special judge.

Action of trespass to try title, instituted by the defendant
in error in the District Court of Jack county against the
plaintiff in error, for one hundred and sixty acres of land.
The defendant in error claimed said land as a preëmptor and
actual settler. He claimed to have settled on said land in
good faith on July 20, 1873. He further stated in his peti-
tion and amended petition that the plaintiff in error claimed
four leagues of land in Jack county, by virtue of a patent to
said land as county school land and by virtue of two acts of
Congress of the Republic of Texas, approved respectively
January 26, 1839, and February 5, 1840, appropriating and
granting lands for educational purposes. He averred that
said four leagues of land embrace the land claimed by him;
that the four leagues were surveyed by L. E. Camp, deputy
surveyor of Denton land district, on the 6th, 7th, and 8th
days of December, A. D. 1856; that said survey was duly
recorded in Denton county in December, 1856, and thereafter
recorded in Henderson county; that the field-notes of the
survey were not returned to the general land office until May
27, 1874; that a patent was issued therefor March 8, 1875;
that all this creates a cloud upon the title of the defendant
in error. He further alleged that the above acts of Congress
were repealed by an act to establish a system of public free

schools for the State of Texas, approved August 13, 1870, and that said repealing act was repealed by an act entitled "An act to establish and maintain a system of public free schools in the State of Texas," approved April 30, 1873, thereby leaving said land vacant at the time of the settlement on it by the defendant in error. Henderson county failed to appear and answer the suit in the District Court of Jack county, and judgment by default was taken against it. Henderson county brought the case up by writ of error.

*Greenwood & Gooch,* for plaintiff in error.—The court erred in rendering the judgment rendered in said cause, although the plaintiff's case as stated may all be true and the verdict of the jury fully sustained by the evidence, because the case as stated by plaintiff in said suit and the verdict of the jury show that Henderson county had a good, valid, and indefeasible legal title to the four leagues vacated by the judgment of the court.

We submit, that the provisions of the act of February 10, 1852, requiring the field-notes of surveys to be returned to the general land office within twelve months from date of surveys, do not apply to surveys made by the counties of school lands for educational purposes. This court has decided that said act does not include the surveys of preëmptors. (Parish *v.* Weatherford, 19 Tex., 211.) In the case of Milam County *v.* Robertson, 33 Tex., 366, this court decided that the provisions of said act do not apply to the counties.

We further submit, that the acts of the Congress of the Republic approved January 26, 1839, and February 5, 1840, are not repealed, as contended by defendant in error. If they were repealed, as stated and charged by defendant in error, such repeal did not, and could not at the date of supposed repeal, in the least affect or impair the title of Henderson county to her school lands. The law under which Henderson county made the survey of the four leagues of land in controversy, was the said act of the Congress of the Re-

public donating and granting four leagues of land to each county of the Republic. At the date of the survey said law was of full force, and said law did not require the return of the original field-notes of the survey to the general land office. But said law required the surveyor to return the field-notes of the survey to the clerk of the County Court, whose duty it was to record the field-notes of survey, with description of the land, and forward a transcript of his record to the commissioner of the general land office, after the record, with his certificate and the seal of his office thereto attached. When the land so surveyed was not situated in the county for which it was surveyed, the description and field-notes were required to be recorded in the county in which it was surveyed, as well as in the county in which it is situated, and then transcript forwarded to the land office, as above stated. (Paschal's Dig., arts. 3404, 3466, 3468.) This donation and grant by the Republic was made by legislative authority, in obedience to section 4 of article 10 of the Constitution, so made in discharge of an obligation and duty of the government to provide for the education of its citizens, so as to secure its preservation and perpetuity.

The acts of the Republic making the donation and grant, are the evidence of such grant to the county; the survey by the county and the registration of the survey and description of the land by the clerk of the County Court in his book for registration of land titles, are the evidence of the acceptance of such grant and donation; and the selection of its locality and the record of the description and survey in the county in which the land is located, are constructive notice to all the world of the appropriation of such land. These acts, we maintain, completed the grant and vested the title in Henderson county. It is true that the county clerk did not send to the commissioner of the general land office a transcript of his record of the description and field-notes of the survey within twelve months. The law did not require him to do so. While it was his duty to do so at some time, the law

did not limit the time within which that duty was to be per-
formed. The law does not declare that the counties are to
lose or forfeit their school lands on account of failure of the
county clerk to do so within a given time, or because the
clerk failed to perform a duty. We are aware of no law
which requires the State to issue patents to the counties for
school lands. We apprehend that few, if any, such patents
issued prior to the adoption of the Constitution of 1869.
Under that Constitution and the legislation of 1870, the
question was mooted as to whether the counties owned any
school lands. It was maintained that such claims to land
had been abolished, and that such lands constituted a part of
the public domain of the State, and were subject to settlement
and location as other public domain of the State.

We contend that Henderson county's title is a legislative
grant without conditions of defeasance, and that a legisla-
tive grant is higher evidence of title than a patent, as it was
the direct grant of the fee which had been in the State by
the government itself, acting through its sovereign law-mak-
ing department, whereas a patent is only the act of its minis-
terial officers. (Wash. on Real Prop., p. 191; Doe v. Beards-
ley, 2 McL., 412; Fletcher v. Peck, 6 Cranch, 87; Sargent v.
Simpson, 8 Maine, 148; Grignon v. Astor, 2 How., 319.)
Where a grant was made by the State of Pennsylvania to
one upon his paying a certain sum after a survey made, it
was held that, upon a return of such survey and payment
having been made, the title and legal possession of the land
vested at once in the grantee. (Potts v. Gilbert, 3 Wash.,
475.) A grant of land by the government is tantamount to
a conveyance with livery of seizin. (Enfield v. Day, 11 N.
H., 520; Enfield v. Permit, 8 N. H., 512; Bellows v. Copp,
20 N. H., 492; McCaughal v. Ryan, 27 Barb., 376; Robin-
son v. Lake, 14 Iowa, 424.) And the doctrine that a State
may grant its lands by resolve of its Legislature is adopted
both in Maine and in California, and may be effectual with-
out a deed or patent. (Cary v. Whitney, 48 Maine, 526;

Megerle v. Ashe, 27 Cal., 327; Kernan v. Griffith, 27 Cal.,
89; Mayo v. Libby, 12 Mass., 339.)

When an alcalde, or commissioner, executed a concession
for a purchase grant, although there were annexed to it con-
ditions subsequent which had not been performed, yet the
title was perfect,—not inchoate,—and a locator had no right
to claim a forfeiture on account of the non-performance of
conditions. (Paschal v. Perez, 7 Tex., 348; Hancock v.
McKinney, 7 Tex., 384; Edwards v. James, 7 Tex., 372;
Swift v. Herrera, 9 Tex., 281; Stringer v. Young's Lessee, 3
Peters, 320; Boardman v. Reed, 6 Peters, 328.)

*A. T. Watts*, for defendant in error.—I respectfully submit
that the Legislature had the power and did unquestionably
extinguish the trust that was conferred upon the counties by
the acts of the Congress of the Republic referred to hereto-
fore. The object and purpose of those acts were to establish
a county system of education. Unquestionably this whole
purpose was changed, and the title and control of these
school lands assumed by the State, by virtue of section 19 of
"An act to establish a system of public free schools for the
State of Texas," approved August, 1870. By the positive
provisions of said section these county school lands were de-
clared to constitute part of the permanent school fund of the
State, not the proceeds of, but the land itself. Section 8 of
article 9 of the Constitution of 1868 and 1869, authorized this
legislation, or, more properly speaking, declared the power
theretofore existing in the Legislature.

That this latter act repealed the said acts of Congress, is
much too plain for controversy. Now, this act of 1870 was
specifically repealed by the act of April 30, 1873. (Gen. Laws,
1873, sec. 36, p. 94.) Paschal's Digest, art. 4577, provides:
"Whenever one law which shall have repealed another shall
itself be repealed, the former law shall not be revived with-
out express words to that effect." There was no provision for
revivor in said act of 1873. After said repeal, what was the

status of these lands? The question admits of but one answer. Certainly it was part of the public domain of the State, subject to location and preëmption.

In this case it was averred and shown that about eighteen years had elapsed from the time of the pretended survey until the field-notes were returned to and filed in the general land office. The act of February 10, 1852, (Paschal's Dig., art. 4566,) provides that "the field-notes of all surveys hereafter made shall be returned to and filed in the general land office within twelve months from the date of survey." Article 4568 denounces the penalty in these words: "In either case shall be null and void, and the lands be subject to relocation and survey, as other vacant and unappropriated land." This act applies to all surveys except preëmptions, the limitation being definitely fixed in the preëmption acts. Certainly it applies to corporations as well as to individuals. Article 7085 of Paschal's Digest furnishes a legislative construction of said act of February 10, 1852, and includes "individuals" and "corporations." Mark the language: "All holders of land certificates, whether individuals or corporations, shall, &c." Also note the last clause in article 7086.

This pretended survey was made long before, and the field-notes returned to and filed in the general land office long after, the adoption of the Constitution of 1868 and 1869, under which Constitution Shook's rights accrued and were adjudicated. Now, to remove all doubt as to the effect of the act of February 10, 1852, article 10 of section 2 of that Constitution provides: "That the residue of the public lands may be ascertained, it is declared that all surveys of land heretofore made and not returned to the general land office in accordance with the provisions of an act entitled 'An act concerning surveys of land,' approved 10th February, 1852, are hereby declared null and void." The act of February 10, 1852, and the constitutional provision referred to, are so plain as to admit of no doubt or construction. Language cannot be made plainer.

Shook had before him, at the time he settled upon the said land, a legislative declaration that the same was vacant, and a constitutional declaration to the same effect.

Bonner, Associate Justice. — In this case patent had issued to Henderson county for her school lands, situated in Jack county, prior to the institution of the suit. The plaintiff sought to avoid the same, virtually, upon the ground that although the surveys had been made under the acts of January 26, 1839, and February 5, 1840, prior to his settlement as a preëmptor, yet they had not been returned to the general land office until thereafter.

The material question in the case has been decided in the case of Riddle *v*. Fannin County, *supra;* and under the authority of that decision, the judgment below is reversed and the cause dismissed.

Reversed and dismissed.