JOHN W. MURPHY ET AL. v. T. N. LUTTRELL ET AL.

Decided May 20, 1909.

**1.—Trespass to Try Title—Location and Survey—Patent.**

The right to recover land by one owning a certificate and showing a valid location and survey, is met by proof of a patent to defendant or a third party under a different certificate and survey, unless plaintiff then shows a superior

right over the patentee by virtue of his priority of appropriation or the invalidity of the patent; and this is true though the patent issued after suit was brought.

**2.—Field Notes—Return.**

If the Act of February 12, 1852 (Laws 4th Leg., p. 58) requiring that field notes of previous surveys be returned to the General Land Office by Aug. 31, 1853, was applicable to surveys of land for public school purposes, which is questioned, the rights lost by failure to comply therewith were restored by the Act of April 25, 1871, and prevailed over an adverse location made after the latter Act took effect.

**3.—Same—Forfeiture—Waiver.**

The State had the right to waive forfeiture of a land location by failure to return the certificate, and the legislative Act doing so was not a new donation.

**4.—Corporation—Dissolution—Nonuser of Franchise.**

In case of a corporation chartered for the promotion of public education, it seems that the presumptions of forfeiture or corporate dissolution obtaining in case of corporations for private gain will not be indulged.

**5.—Same.**

Nonuser of franchise is merely a ground for forfeiture or dissolution of a corporation by judicial proceedings by the State; and presumption of dissolution from long nonuser is rebutted by a statute recognizing continued existence of the corporation.

**6.—Same—College—Right to Hold and Convey Property.**

An educational corporation endowed by grant of a land certificate, surveyed for it but not patented, took no steps to establish its school or otherwise exercise its powers for more than sixty years, during which time a majority of the trustees named in the charter either died or moved from the State. A special Act of the Legislature then filled the vacancies in the board of trustees and authorized such reorganized board to exercise the powers granted by the original charter. Patent to the lands formerly located and surveyed was then issued to the corporation. Held, that its title prevailed over that of an adverse claimant locating a certificate in compliance with law upon the same land during the period of nonuser of its franchises.

**7.—After Acquired Title—Pleading.**

Defendants in trespass to try title could not receive affirmative relief by reason of patent issued after suit was filed without pleading, by amendment, such after acquired title; but they could introduce same as showing an outstanding title in disproof of plaintiff's right to recover without repleading their plea of not guilty after the patent issued.

**8.—Public Lands—School Land.**

Lands granted for the establishment of a college for public education, on the dissolution of such corporation became, by Art. 9, Sec. 6, of the Constitution of 1869, and similar provisions in the Constitution of 1876, a part of the public school fund and were not subject to location as part of the unappropriated public domain.

Appeal from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*Smelser & Vaughan* and *M. L. Harkey,* for appellants.—The presumption is in favor of the validity of the title conveyed by the State to said trustees by virtue of the patent; and the burden was upon the plaintiffs (appellees) to show that said patent was wrongfully issued

and that they themselves had a superior title to the title conveyed by said patent; and this they failed to do. General Laws 30th Leg., ch. 56, p. 122; Laws of Texas, vol. 2, pp. 142-145; Tom v. Sayers, 64 Texas, 343; Atkinson v. Ward, 61 Texas, 385; Evitts v. Roth, 61 Texas, 87; McWhirter v. Allen, 1 Texas Civ. App., 652.

The title to the land in controversy became vested in the trustees of DeKalb College and the title of said trustees thereto became perfect long before any effort was made by those under whom plaintiffs claim, to locate on said land. Act of January 6, 1839; Act of February 3, 1845; Act April 25, 1871, p. 60, sec. 2; Pasch. Dig., art. 7089; Rev. Stats. (1879), art. 3921; New York & T. Land Co. v. Gardner, 11 Texas Civ. App., 404; Garza v. Cassin, 72 Texas, 442.

*A. A. Ablowich,* for appellees.—The rights of parties are fixed as of the time when the demise is laid in the petition, and defendants should not be allowed to acquire good titles during suit, much less bad ones. Menifee v. Hamilton, 32 Texas, 495. Title accruing afterwards not a fact in issue under a plea of not guilty. Fitzpatrick v. Fitzpatrick, 75 Am. Dec., 681; Hardy v. Johnson, 1 Wall. (U. S.), 397; 5 Ency. of Evid., 15. Matters in evidence not plead should be disregarded. 7 Texas, 338; Freeman v. Aninch, 87 Texas, 132, 27 S. W., 97, 37 S. W., 605, 1 S. W., 110, 6 S. W., 780, 22 S. W., 397. Title subsequently acquired must be set up by supplemental answer and is a waiver of all other defenses, and costs must be paid. 21 Ency. of Pl. and Pr., 9, 42, 44, 50 and 7 Do., 345. It is immaterial to a defendant that there is a legal title outstanding, if it was not in existence when suit filed. Mealy v. Lipp, 91 Texas, 182. We suggest the unconstitutionality of the Acts of '39 and of '07. The Constitution of '36 only delegated certain powers to Congress enumerated in article 2. "In order to guard against the powers delegated, every other right not herein delegated is reserved to the people." Sayles' Const., p. 172. Congress was to provide a general system of education. Sec. 5, p. 168. All laws then in force were then to remain in force. Sec. 1, p. 166. All appropriations for private or local purposes had to be concurred in by a two-thirds vote of each house. Sec. 25, art. 1. The Act of '39 is shown by article 696, Early Laws, to be obsolete. There was no authority for Congress to give land to individuals for educational purposes. Again the Act of '07, showing the old corporation to have been dissolved, because from deaths and removal there was not a quorum (9 Am. & Eng. Ency. of Law, 557; Clark & Marshall on Corps., 2d vol.), by appointing new trustees with the privileges of those in the Act of '39, if it accomplishes anything whatever, creates a private corporation otherwise than by general laws in contravention of section 1, article 12, Constitution of '76. 7 Am. & Eng. Ency. of Law, 662, 114 N. W., 917. The Acts recognize it to have been a private corporation, and the State could not have been a part owner of its property. Sec. 31, Const. of '45. Only a corporation dissolved de jure can be revived by the Legislature. Thompson Corps., secs. 6760, 6578, 6652, 6655. The corporation was then not barely sleeping, but dead. 10 Cyc., 1293. It could create a new one, but could not bring a dead one back to life.

A dissolution, without a judgment of forfeiture, can take place when an abandonment in fact and not merely nonuser. 11 Vt., 296, 10 Texas, 138. But there was a dissolution otherwise, and an abandonment by the trustees of purposes of corporation. A dissolution can be presumed by abandonment after great length of time, and no business done. 10 Cyc., 1281-1300. If the trustees abandoned the purposes of their incorporation—the establishment of a college—the land of necessity was abandoned. 11 Texas, 704. The evidence shows the trust to have been wholly unexecuted save the survey, which was only incidental to the purpose of their appointment. If there was a dissolution by abandonment, the land certainly returned to the mass of vacant unappropriated domain, subject to the just debts of the State to those who had earned land by onerous consideration. 26 Am. & Eng. Ency. of Law, 221-290; 1 App. C. C., 998. It was not then appropriated by the State, as the Capitol grounds, or reserved as the islands (32 Texas, 154; 20 S. W., 1117; 54 Texas, 544), but belonging to its general fund of land.

To have reserved it would have taken a proper and legal act (26 Am. & Eng. Ency. of Law, 223), and even if that was not true the State itself would be stopped and barred by laches under the evidence if she was complaining. 112 S. W., 822; 18 S. W., 109; 39 S. W., 995; 21 Texas, 753. Our location then was good, for the trustees had no equity whatever, and even if land was reserved there is no subsequent location. Time bars all claims, even appointment of trustees, and we are bound only as the State is bound. Our equity, based on a valuable consideration, would be superior to a gift by the State, for our location was not void. 109 S. W., 210; 24 S. W., 1102; 25 Texas Supp., 409.

The corporation being dissolved, its equitable right to the land reverted to the State and was merged in the public domain. That it had reverted: 28 N. E., 54; 21 N. E., 927; 48 Texas, 175; 11 Texas, 704; 17 S. W., 202; 21 S. W., 66; Thomson's Corps., sec. 6718. In the present case the land had not been patented, nor had the trust attached, and no beneficiaries had a claim upon the land. If there had been they would be barred by limitation. Our location was not void, under any circumstances, and could only be attacked by prior equity and one not inferior. 109 S. W., 210; 62 Texas, 91; Thomson on Corporations, sec. 6745.

Appellants contend the Act of '71 validated the non-return of field notes. We contend: (1) It could not have done so against the constitutional provisions quoted. (2) That the same was not intended. (3) The Act was repealed. (4) No one in existence for it to operate upon. Judge Gaines says: "The second section of the Act was doubtless intended to save from forfeiture surveys returned between March 2, '61, and the passage of the Act, but not in accordance with the Act of '52," and indicates that as to even those the Act could not be given effect. 7 S. W., 739. His opinion indicating he doubts the intention of the Legislature, but that in no event was the Act intended to apply to surveys made before March 2, '61. 52 Texas, 324. "The practical operation of the Act is doubted at all." The Act will be found: 7 S. W., 739, Early Laws, art. 3546.

If it be conceded the Act of '71 was intended to validate non-return of field notes, then the trial court was justified in finding the corporation was not in existence, and could not accept the benefit of the Act, and that the survey was appropriated as against it on June 4, '72. There can be no grant to a grantee not in existence. 9 Am. & Eng. Ency. of Law, 131; Thompson on Corp., 5803. It can accept nothing; can be no tenant of dead corporation. (7 Ency. of Pl. and Pr., 353); can do or suffer nothing. No trust existed. Title in State prior to Act. 66 Texas, 348.

HODGES, ASSOCIATE JUSTICE.—This is a suit in trespass to try title, instituted by the appellees against the appellants to recover a tract of land situated in Bowie County. The appellees claim as the heirs and purchasers from the heirs of William McDonald, who was the owner of a headright certificate authorizing him to locate and survey a league and labor of land, issued in 1838. They rely for title upon a location and survey made upon the land sued for by virtue of an unlocated balance of this headright certificate. McDonald died sometime about 1849, but prior to his death transferred a one-half interest in his certificate to one T. W. Clark. The record shows that in 1872 a tract of land in Bowie County, including that in controversy, was surveyed for one John L. Riddle, purporting to be done by virtue of the McDonald certificate, or rather of one issued for the unlocated balance due upon that certificate. Whether Riddle was the owner of the certificate, or was merely an agent acting for the real owners in having the land located and surveyed, does not appear. The field notes of this survey were promptly returned to the land office, but no patent ever issued because the location was in conflict with an older survey made for the De Kalb College, and this was noted upon the returns made. Aside from this objection, the location and survey appear to have been regular and made according to the legal requirements then existing. The appellants, defendants below, pleaded not guilty, and to defeat the claim of title offered in evidence by the appellees they offered the following: (1) The record of a survey for 1,211 acres made for the DeKalb College in 1843, which was subsequently shown to include the tract here involved; (2) a certified copy of a certificate issued by the clerk of the District Court of Red River County in 1841, certifying that certain individuals, naming them, as the trustees of DeKalb College were entitled to a survey of four leagues of land in accordance with a statute approved January 26, 1839, by the congress of the Republic of Texas, and reciting that an application had been made to the District Court for a certificate for the land, and that the court, in response, had decreed that the trustees and their successors in office were entitled to one league of land, being one of the four leagues above mentioned, to be surveyed and located on any lands not otherwise appropriated, for the benefit and use of the DeKalb College; (3) a patent from the State issued to the trustees of the DeKalb College, dated May 24, 1907; (4) deeds from the DeKalb College, signed by the president and secretary, conveying the land sued for to the appellants. It was also shown that the field notes of this survey were returned to the land office in 1855.

The case was tried before the court without a jury, and judgment rendered in favor of the appellees, awarding them the land sued for. The court filed no findings of fact or conclusions of law, and we are not advised as to what formed the basis of the judgment. We think, however, that the controlling question is one of title as between the appellees, who claim under the location made by virtue of the certificate issued to William McDonald, and the appellants, claiming through the patent issued to the DeKalb College, or upon the fact that the DeKalb College held a superior outstanding title. In suits of this character the plaintiffs in the case must recover, if at all, upon the strength of their own title, and not upon the weakness of the claim of their adversaries. We shall assume that the evidence is sufficient to connect the appellees by inheritance and otherwise with the ownership of the McDonald certificate located and surveyed for John Riddle upon the land in controversy, and that the location and survey and the return of the field notes were all done regularly and in the manner required by the existing law, and shall consider the strength of their title from that standpoint. This would be evidence sufficient to show prima facie an appropriation of the land and an equitable right to the title and possession. But upon the production of a patent issued by the State to another the prima facie case was overcome and the burden rested upon the appellees to show a legal or equitable right to the land superior to that of the patentee. Johnson v. Eldridge, 49 Texas, 507; Miller v. Brownson, 50 Texas, 591; Deen v. Wills, 21 Texas, 649; Miller v. Moss, 65 Texas, 181; Clements v. Eggleston, 2 U. C. (Posey), 483; Rutherford v. French, 2 U. C. (Posey), 725. It is true this patent was not issued to the college for this particular land until the year 1907, but when issued it vested in the college the absolute right to the land except as against the State or some one having a prior legal or equitable claim. Woods v. Durrett, 28 Texas, 438; McLeary v. Dawson, 87 Texas, 535, 29 S. W., 1044. The DeKalb College was created by an Act of the Congress of the Republic of Texas passed January 29, 1839. 2 Laws of Texas, 142. The provisions of the Act material to this controversy are as follows:

"An Act to Establish and Incorporate the College of DeKalb:

"Sec. 1. Be it enacted by the Senate and House of Representatives of the Republic of Texas in Congress assembled, That there shall be and is hereby established a college at the village of DeKalb, in the County of Red River, to be under the superintendence of James Browning, David ——, James N. Smith, Richard Graham, William ——, John H. Dyer, Jackson Titus, Hiram A. Allen, Richard Ellis, Isaac Jones, George Wright, John Fowler, Holland Coffee, and their successors, who are hereby constituted a body politic and corporate, in deed and in law, by the name and style of the Trustees of the College of DeKalb; and by that name they and their successors shall and may have perpetual succession, and be able and capable in law to have, receive and enjoy, to them and their successors, lands, tenements and hereditaments, of any kind or value, in fee, or for life, or years, and personal property of any kind whatsoever, and also all sums of money of any amount whatsoever which may be granted or bequeathed to them for the purpose of promoting the interest of the said college.

"Sec. 2. Be it further enacted, That the trustees of the College of DeKalb shall and may have a common seal for the business of themselves, their successors, with liberty to change or alter the same from time to time, as they shall think proper, and that by their aforesaid name they and their successors shall and may be able to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all courts of law and equity within this Republic, and to grant, bargain, sell or assign any bonds, tenements, goods or chattels, in such manner as may hereafter be specified, and to act and do all things whatsoever for the benefit of the said institution, in as ample manner as any person, or body politic or corporate, can or may do by law.

"Sec. 4. Be it further enacted, That the first meeting of the board of trustees shall be at the said college on the first Thursday in March, 1839, when they shall proceed to elect out of their own body a president, secretary and treasurer; the president shall have power to call extraordinary meetings of the trustees, by giving the members due notice thereof. The ordinary meetings of the board shall be on their own adjournments; seven men shall constitute a board to do business. In case of death, removal from the country, resignation, refusal or neglecting to act, of any of the trustees, the board may at any time appoint a successor.

"Sec. 5. Be it further enacted, That the trustees of the College of DeKalb, and their successors, shall have power to engage a president and other professors, and all other officers necessary for the conducting the literary concerns of the college, and to displace and appoint others at pleasure; they shall have power and authority, and it shall be their imperative duty, to examine the proficiency of the students and to make all laws and regulations (not contrary to the Constitution of the Republic) which they shall deem necessary for the good government of said college, and for promoting learning, morality and virtue, among the students; they shall take effectual care that students of all religious denominations may and shall be admitted to equal advantages, and that they receive alike fair and generous treatment during their residence thereat.

"Sec. 6. Be it further enacted, That the lands, public buildings and other property belonging to the College of DeKalb, are hereby declared to be free from any kind of public tax.

"Sec. 10. Be it further enacted, That [there] shall shall be granted to the trustees and their successors in office, four leagues of land, to be located on any vacant and unappropriated lands in the Republic, in tracts not less than one league square, and that the board of land commissioners for the county of Red River, are hereby authorized and required to issue certificates in tracts not less than one league square, in the name of the trustees of DeKalb College and their successors, without charging any fees for the same; and the said trustees and their successors are empowered to employ any legally authorized surveyor to locate and survey the same, and make return of his field notes, which shall be received and examined by the county surveyor in the same manner as prescribed by law, without charging any fees for the same, and the Commissioner General of the Land Office is hereby re-

quired to issue patents for the same to the trustees of DeKalb College and their successors.

"Sec. 11. Be it further enacted, That the said leagues of land are hereby given, granted and confirmed to the said trustees and their successors in fee simple, who shall have full power to alienate, sell, lease, rent or otherwise dispose of the same, and the proceeds shall be for the erection of suitable buildings for the institution, purchasing of a library, philosophical apparatus, chemical laboratory, and for the promotion of arts, literature and science in said institution, and for no other purpose whatever; and the respective sums due and payable the government on which league are hereby remitted and donated to the said institution."

It is not disputed that the location and survey made for DeKalb College was prior in point of time to that of the McDonald location, but it is insisted that the field notes of the survey made for the college were not returned and filed in the General Land Office within the time prescribed by law. Until the passage of the Act of February 12, 1852, there was no time limit fixed by law within which the field notes of surveys of land located by virtue of any certificate were to be returned to the General Land Office. Wyllie v. Wynne, 26 Texas, 45. This Act provided that the field notes of all surveys made previous to its passage should be returned to the land office on or before August 31, 1853, or become null and void, and the land should again become vacant. Pasch., Dig., art. 4562. We think it at least doubtful as to whether that law was intended to apply to the lands granted for the benefit of public schools, such as that involved in this suit. Fannin County v. Riddle, 51 Texas, 360; Henderson County v. Shook, 51 Texas, 370; Milam County v. Bateman, 54 Texas, 153. But if it should be construed as being applicable, we think the Act of April 25, 1871, fully restored whatever right may have been lost by the failure to comply with that requirement. That law provides that "All surveys properly made by virtue of genuine or valid land certificates, which surveys, together with the certificates by virtue of which they were made, have been returned, and are now on file in the General Land Office, . . . and not in conflict with any other valid land claim shall be deemed valid and the Commissioner of the General Land Office is hereby authorized and required to issue patents for the same." Pasch., Dig., art. 7089. This law became effective the year before the McDonald certificate was located upon the land in suit. The State had the right to waive the forfeiture, if any had taken place, by reason of a noncompliance with the requirements to return the field notes within the time prescribed. By the terms of that Act this did not become a new donation, but a waiver merely of the right of the State to assert a claim of forfeiture to what had once been granted. Adams v. Houston & T. C. Ry. Co., 70 Texas, 253, 7 S. W., 729; Hart v. Gibbons, 14 Texas, 215; Warren v. Shuman, 5 Texas, 456; Lewis v. Mixon, 11 Texas, 570; Jennings v. De Cordova, 20 Texas, 508. We think it is clear from the foregoing that no forfeiture occurred prior to the location of the McDonald certificate. Whatever defect there might have been in the issuance of the certificate and making the survey in obedience thereto, was also cured by a subsequent statute vali-

dating surveys made in behalf of DeKalb College. This Act will be found in volume 2, p. 1153, of the Laws of Texas, and was passed by the Congress of the Republic in 1845.

It is contended that the DeKalb College as a corporation had become defunct; that a majority of those named as trustees had died or moved away, and the purposes for which the corporation was created were abandoned; and that for these reasons it was incapable of holding title to the land in controversy. The evidence shows that about 1873 the board of trustees of the college met and elected a president and other officers, but that aside from this proceeding they never did anything further towards carrying out the purposes for which the corporation had been created. Since that time a majority of the board of trustees have either died or moved out of the country, leaving only a minority in a situation to carry on the business of the institution. It is further shown that on the 14th day of March, 1907, the District Court of Bowie County, by an order entered upon the minutes, appointed seven trustees for the DeKalb College to fill the vacancies created by the death or removal of those who formerly held those positions. On April 3, 1907, the Legislature enacted the following amendment to the original incorporation act, naming as trustees the individuals previously appointed in the order of the court referred to above:

"Be it enacted by the Legislature of the State of Texas:

"Whereas, Silas McCrary, William N. Boyse, O. P. Moss, James G. Holloway and L. C. Powell, who are either dead or have removed from the State of Texas, and at the time thereof, together with Solomon Hewit, W. W. Sanders and R. M. Johnson, constituted the Board of Trustees of the College of DeKalb, Texas, and that by reason of such deaths and removal there are now less than a quorum of said board; therefore, chapter CCLXXIX, section 1, of the Acts of the Thirteenth Legislature of the State of Texas, are so amended as to hereafter read as follows:

"Section 1. That said College shall be established at the town of DeKalb, in Bowie County, Texas, and shall be under the superintendence of Solomon Hewit, W. W. Sanders, R. M. Johnson, A. G. Crump, Lee Harkey, Dave Smith, E. J. McKinney and John Clark, and their successors, and they are hereby invested with all rights, powers and privileges vested in the trustees of the College of DeKalb, by virtue of 'An Act to establish and incorporate the College of DeKalb,' approved January 26, 1839, and the above-named persons are hereby named and styled the Trustees of the College of DeKalb, and that a majority of said trustees shall constitute a board to transact business, and that when any vacancy shall occur in said board of trustees, either by death, removal from the State, failure or refusal to serve, such vacancy shall be filled by a majority vote of said board of trustees." Laws of 1907, p. 122.

This corporation known as DeKalb College was not, strictly speaking, a private enterprise chartered for the purpose of enabling certain individuals to further a scheme for a private benefit, but was in the nature of a public institution organized in part performance of the duty of carrying out the policy directed by the Constitution to pro-

vide for a general system of education for the public benefit, and was to establish and endow a college for the teaching of the higher branches of learning. The so-called franchise which was granted was intended for a public benefit, and not for private gain; and we do not think the same presumptions of forfeiture or of corporate dissolution which usually obtain in cases of long nonuser by those who compose private corporations should be here indulged. But if this should be done, the facts of this case do not disclose a situation in which the court would be warranted in concluding that the corporation was so far dissolved that it was, at the time the land was conveyed to the appellants, incapable of holding and conveying property. A corporation continues its legal existence till its charter expires by limitation or its franchise is lost or forfeited in some of the methods provided by law. Nonuser for a long period of time may be grounds for a forfeiture or dissolution of a private corporation, but does not of itself put an end to the franchise. Moseby v. Burrow, 52 Texas, 396; Higgins v. Downwood, 8 Houston (Del.), 227, 40 Am. St. Rep., 141; 1 Beach on Priv. Corp., sec. 49. It is universally held as a general rule that the forfeiture of the franchise of a private corporation can not be claimed in a collateral proceeding merely because grounds of forfeiture may exist. The forfeiture must be declared in a judicial proceeding instituted for that purpose. Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 595, 17 S. W., 70. The presumption that a corporation has been dissolved, which is sometimes said to arise from nonuser of its corporate franchise for a long time, is rebutted by evidence of a statute recognizing the corporate existence. 3 Ency. Ev., 658, citing State v. Vincennes University, 5 Ind., 77. Whether the franchise is to be forfeited depends upon the will of the body that created it. State v. Morris, 73 Texas, 435, 11 S. W., 392. It would seem that the Act of April 3, 1907, before referred to, furnishes conclusive evidence that the State does not now and has not heretofore desired to recall the corporate franchise conferred upon the DeKalb College. There being no judgment of dissolution putting an end to the corporate existence of the DeKalb College, and no conditions or limitations in the Act creating it, we conclude that the DeKalb College was capable of holding and conveying property acquired in its corporate capacity, and that it had at the date of the trial below a legal existence with powers fully as extensive as those originally conferred. The fact that a majority of the trustees had died did not destroy the corporate entity. The Legislature had the authority to do that which it did—appoint others in the places of those who had died or removed from the country—or it might have authorized the remaining minority to exercise the corporate functions.

It is also contended that the title upon which the appellants rely was acquired after suit was filed, and that it is therefore no defense unless they had amended their pleadings after its acquisition. Had the appellants sought affirmative relief this contention would probably be tenable. But in relying upon their plea of not guilty alone they had the right to avail themselves of any evidence of the weakness or insufficiency of the title asserted by the appellees, and to thus defeat their claim of ownership. If they could accomplish this purpose by showing a superior outstanding title in the DeKalb College without

connecting themselves with it, it was immaterial when the final evidence of this title was acquired by the college, whether before suit or afterward. The fact that they sought to and did connect themselves with this outstanding title held by the college did not detract from its potency as a defense to the claim of ownership by the appellees. It would be nonsense to require the appellants to repeat their plea of not guilty after the DeKalb College acquired the patent from the State. Had they specifically pleaded their title and relied upon that as a defense, the situation would have been different, and there might have been some basis for the contention of the appellees.

But there is, we think, still another view of this case which precludes any conclusion that the appellees could have acquired a valid claim to the land in controversy, even admitting that the DeKalb College had lost its corporate existence before the institution of this suit. If a dissolution had taken place and the corporate entity had become defunct, the lands which it had acquired by virtue of the location and survey previously made would logically revert to the State and become a part of the public domain either appropriated or unappropriated, according to the then status of the law. We think the Act of the Congress of the Republic of Texas, in creating the corporation known as DeKalb College and in granting to it the right to the four leagues of land for the purpose of providing a fund "for the erection of suitable buildings for the institution, purchasing of a library, philosophical apparatus, chemical laboratory, and for the promotion of arts, literature, and science in said institution," was an appropriation of a part of the public domain for the support of a public school, and was an undertaking in part performance, at least, of the duty imposed by the Constitution of the Republic requiring Congress to provide a system of public education. That this institution was intended to be a public one is made evident by the provisions of section 7 of the Act creating the incorporation, which empowers the trustees to suppress and abate nuisances, to levy and exact fines upon retailers of spirituous liquors, to impose fines upon persons offending within certain territorial limits, and authorizing the sheriff, constable or other officer, under their direction, to collect such fines from the property of any offender and pay the same over to the trustees for the use and benefit of the college. Section 8 also provides that the trustees shall each take and subscribe to an oath in which they bind themselves to faithfully discharge the duties enjoined upon them. Under the provisions of section 6 of article 9 of the Constitution of 1869 such lands became a part of the public school fund. The section referred to provides, among other things, that "As a basis for the establishment and endowment of said public free schools, all the funds, lands and other property heretofore set apart or appropriated, or that may hereafter be set apart or appropriated for the support and maintenance of public schools, shall constitute the public school fund." A similar provision is also found, in different language, in the Constitution of 1876. Under these constitutional provisions the lands granted, having been appropriated for the benefit of the public schools, in case of reversion would become per force of the Constitution a part of the public school fund, and as such could not form the basis for the location of a headright certificate.

These certificates would necessarily have to be located upon the unappropriated public domain. McKinney v. Grassmeyer, 51 Texas, 381. If this be correct, then the location and survey upon which the appellees rely, even admitting that their contention with reference to the legal existence of the college be true, conferred no title or right to the land sued for, and are wholly insufficient to sustain a judgment in their favor.

We think the appellees failed to establish either a legal or an equitable ownership of the land, and that the court erred in rendering judgment for them. The judgment is therefore reversed, and judgment here rendered that they take nothing by their suit and pay all costs, both in this court and the court below.

*Reversed and rendered.*

Writ of error refused.