TRUSTEES OF COLLEGE OF DE KALB v. WILLIAMS.†

(Court of Civil Appeals of Texas. Texarkana. Jan. 19, 1912. Rehearing Denied Feb. 1, 1912.)

1. ADVERSE POSSESSION (§ 7*)—PUBLIC PROPERTY—COLLEGE LANDS.

A college incorporated in 1839 by an act of the republic of Texas (Laws 1839, p. 128), granting land to trustees, with a right to dispose thereof and use the proceeds for the college, is within Rev. St. 1895, art. 3343, providing that any person who has a right of action for the recovery of land held in adverse possession must sue within 10 years, and not within the exemption in article 7, § 6, of the Constitution of 1876 declaring that no adverse possession shall be available against the title of any county, since the exemption is restricted to land donated to the counties.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 24–42; Dec. Dig. § 7;* Limitation of Actions, Cent. Dig. §§ 223, 224.]

2. ADVERSE POSSESSION (§ 7*)—LIMITATIONS AGAINST STATE.

The college, though designed for a public corporation, to be employed as a medium through which the republic was to exercise some of its governmental functions, is not within Rev. St. 1895, art. 3351, declaring that the right of the state shall not be barred by limitations; and the title of the college to the land granted to it may be lost by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 7.*]

Appeal from District Court, Bowie County; P. A. Turner, Judge.

Action by the Trustees of the College of De Kalb against Jim Williams. From a judgment for defendant, plaintiffs appeal. Affirmed.

A. A. Ablowich, Smelser & Vaughan, and R. H. Jones, for appellants. Chas. S. Todd and Hart, Mahaffey & Thomas, for appellee.

HODGES, J. The trustees of the College of De Kalb instituted this suit against the appellee, Williams, to recover a tract of land situated in Bowie county. They claim the land as a part of a grant from the republic of Texas, made at the time the College of De Kalb was created.

Among other defenses, the appellee, defendant below, pleaded an adverse possession extending over a period of more than 10 years next before the institution of this suit. To this plea appellants demurred, upon the ground that it constituted no defense; but the demurrer was overruled, and a judgment

entered in favor of the defendant. It is admitted by the appellants that the facts are sufficient to establish the defense of limitation; and that judgment was properly rendered in favor of the defendant upon that issue, if the statute of limitation of 10 years operates to bar the character of claim asserted by them in this suit. Counsel for both parties have agreed that this is the sole question involved in this appeal.

It is contended on the part of the appellants that the College of De Kalb is a public corporation, and agency of the state, and that it was created as a medium for exercising some of the functions of government —that of promoting public education; that, while the land was granted to the appellants by the state, yet it was only in trust, and still remained the property of the state, subject to the particular use specified. Upon that theory, the argument in favor of the demurrer is based, and the contention made that the defense of limitation is not here available.

[1] The College of De Kalb was incorporated by an act of the republic of Texas, approved January 26, 1839. The following are some of the provisions of that act:

"Section 1. Be it enacted by the Senate and House of Representatives of the republic of Texas in Congress assembled, that there shall be and is hereby established a college at the village of De Kalb, in the county of Red River, to be under the superintendence of James Browning, David ———, James N. Smith, Richard Graham, William ———, John H. Dyer, Jackson Titus, Hiram A. Allen, Richard Ellis, Isaac Jones, George Wright, John Fowler, Holland Coffee, and their successors, who are hereby constituted a body politic and corporate, in deed and in law, by the name and style of the trustees of the College of De Kalb; and by that name they and their successors shall and may have perpetual succession, and be able and capable in law to have, receive and enjoy, to them and their successors, lands, tenements and hereditaments, of any kind or value, in fee, or for life, or years, and personal property of any kind whatsoever, and also all sums of money of any amount whatsoever, which may be granted or bequeathed to them for the purpose of promoting the interest of the said college.

"Sec. 2. Be it further enacted, that the trustees of the College of De Kalb shall and may have a common seal for the business of themselves, their successors, with liberty to change or alter the same from time to time, as they shall think proper, and that by their aforesaid name, they and their successors shall and may be able to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all courts of law and equity within this republic, and to grant, bargain, sell or assign any bonds, tenements, goods or chattels, in such manner as may hereafter be specified, and to act and do all things whatsoever for the benefit of the said institution, in as ample manner as any person, or body politic or corporate, can or may do by law.

"Sec. 3. Be it further enacted, that no misnomer of the College of De Kalb, shall defeat or annul any gift, grant, devise or bequest to the same: Provided, the true interest of the parties shall sufficiently appear upon the face of the gifts, grants or will or other writing whereby any estate or interest was intended to pass to the said college; nor shall any misuser or nonuser of the rights, liberties, privileges, jurisdiction and authorities, hereby granted to the said college, create or cause a forfeiture of the charter thereof.

"Sec. 4. Be it further enacted, that the first meeting of the board of trustees shall be at the said college on the first Thursday in March, 1839, when they shall proceed to elect out of their own body, a president, secretary and treasurer; the president shall have power to call extraordinary meetings of the trustees, by giving the members due notice thereof. The ordinary meetings of the board shall be on their own adjournments; seven men shall constitute a board to do business.—In case of death, removal from the county, resignation, refusal or neglecting to act, of any of the trustees, the board may at any time appoint a successor."

By section 5, the trustees and their successors were given power to engage the services of a president, teachers, and all officers necessary for conducting the business of the college, to examine the proficiency of students, and "to make all laws and regulations (not contrary to the Constitution of the republic) which they should deem necessary for the good government of the college." Students from all religious denominations were to be admitted upon an equality. By section 6, the public buildings and other property belonging to the college were exempted from any kind of public tax. Section 7 gave the trustees corporate jurisdiction, within a half mile in any direction from the college, "to suppress and abate nuisances"; to levy and exact fines upon all retailers of spirituous liquors; to fine any person so offending in any sum not less than $25 nor more than $100. It was also made the duty of the sheriff and constable to collect such fines by seizing and selling the property of the offender, as in civil cases. Section 8 prescribed the form of oath required of the trustees. This oath obligated them to faithfully perform their duties as trustees to the best of their skill and ability. Section 9 gave the trustees power to appoint 12 honorary members of their board, who should act with them in the management of the business affairs of the college. Section 10 granted four leagues of land, to be located upon any vacant and unappropriated lands of the re-

public, in tracts not less than one league square. The board of land commissioners of Red River county were required to issue the necessary certificates in the name of the trustees of the College of De Kalb, and without charging any fees. Provision was also made for having the lands surveyed and patents issued without charge of fees. Section 11 is as follows: "Be it further enacted, that the said leagues of land are hereby given, granted and confirmed to the said trustees and their successors in fee simple, who shall have full power to alienate, sell, lease, rent or otherwise dispose of the same, and the proceeds shall be for the erection of suitable buildings for the institution, purchasing of a library, philosophical apparatus, chemical laboratory, and for the promotion of the arts, literature, and science in said institution, and for no other purpose whatever; and the respective sums due and payable the government on which league are hereby remitted and donated to the said institution." See 2 Gammel's Laws of Texas, page 142.

In the case of Murphy v. Luttrell, 120 S. W. 905, this court had before it a controversy in which the continued existence of the College of De Kalb as a corporate entity was denied, and the validity of surveys of land theretofore made in its favor was disputed, upon the ground that the corporation had become extinct. We held against both contentions, and subsequently a writ of error was refused by the Supreme Court. In disposing of the issues then before the court, it was said in the opinion that the purpose of the act of the Congress of the republic in the incorporation of the College of De Kalb was to create a public corporation, and endow it with at least some of the functions of government. While we still entertain no doubt as to the correctness of the legal conclusions necessarily involved in the determination of that case, some of the expressions then used by the writer may be misleading, when applied to the facts now under consideration. That the trustees of the College of De Kalb were given some powers and authority wholly inconsistent with a purpose to make it in all respects a strictly private concern can hardly be denied, when all of the provisions of that act are considered. But, conceding that the trustees were endowed with some of the sovereign functions of state by the original act, and that the college was designed to promote a public purpose—that of furnishing educational facilities to the youth of the country—it does not necessarily follow that the plea of limitation interposed in this case was unavailable as a defense.

Article 3343 of the Revised Civil Statutes is as follows: "Any person who has the right of action for the recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward." The language of this article is sufficiently comprehensive to include within the limitation therein prescribed all classes of landowners. None can claim exemption from the operation of this statute except those who have been expressly, or by necessary implication, excluded.

Article 3351 is as follows: "The right of the state shall not be barred by any of the provisions of this chapter, nor shall any person ever acquire, by occupancy or adverse possession, any right or title to any part or portion of any road, street, sidewalk or grounds which belong to any town, city or county, or which have been donated or dedicated for public use to any such town, city or county by the owner thereof, or which have been laid out or dedicated in any manner to public use in any town, city or county in this state; provided, this law shall not apply to any alley laid out across any block or square in any city or town."

That portion of the last-named article which exempts roads, streets, sidewalks, and grounds from the operation of the statute was enacted in 1887. See Acts 1887, p. 28. But prior to that time, and from an early date in the history of Texas, there have existed similar provisions in favor of lands held by the state. If the appellee could not acquire a title by limitation to the land in controversy, as a result of an adverse occupancy for the statutory period, it must be because of some exception in favor of this class of lands, or some legal immunity derived from that which operates in favor of lands held by the state.

In 1839, at the same session of the Texas Congress which incorporated the College of De Kalb, a grant of three leagues of land was made to each county, for the purpose of establishing a primary school or academy. Paschal's Digest, arts. 3464–3466. By the Constitution of 1845, those grants were recognized and confirmed. In 1856 the Legislature passed an act containing the following provision: "No statute of limitation shall run in favor of any one who has heretofore, or may hereafter settle upon or occupy any of the lands that have heretofore been granted by the state for purposes of education." Paschal's Digest, art. 3470. This language is probably broad enough to include the lands granted to the trustees of the College of De Kalb, and, had this law remained in force, it might now be urged as supporting the contention of the appellants in this case. This provision, however, seems to have been omitted in the codification of 1879, and apparently there is inserted in its stead the following clause taken from the Constitution of 1876, art. 7, § 6: "All lands heretofore or hereafter granted to the several counties of this state for educational purposes are of right the property of said

counties respectively to which they were granted, and title thereto is vested in said counties, *and no adverse possession or limitation shall ever be available against the title of any county.*" We must therefore construe the exception here made in favor of lands theretofore granted for purposes of education as being restricted to lands donated to the several counties. We are then forced to the conclusion that there is at present no express exemption in favor of the particular class of titles to which that here asserted by the appellants belongs.

[2] The next question is, can appellants claim the immunity accorded by law to lands owned by the state? If the land was originally located and surveyed in accordance with the requirements of the statute, so as to segregate it from the public domain and transfer dominion over it to the appellants, or their predecessors, it no longer belonged to the state, any more than did other lands, located and surveyed in behalf of counties, to which similar grants had been made for purposes of education. It may be conceded that the College of De Kalb, as originally incorporated, was designed for a public corporation, and to be employed as a medium through which the republic was to exercise some of its governmental functions; still it does not follow that its being is so intimately interwoven with that of the state as to make its property rights those of the state. Whatever may be said of the legal status of the trustees of the College of De Kalb and the extent of their political powers, when measured by the Constitution and laws of the republic, it can hardly be contended that under our present Constitution and laws those trustees now possess any political authority. Their status with reference to the state, and their powers and duties, must be determined by the laws now in, force. If the college is to be regarded as in any sense a governmental agency, it consists solely in its use as a means for promoting education. While the promotion of education is one of the ends of our present state government, it is not exclusively a governmental undertaking, but is frequently the object of private enterprise. This is shown by the numerous institutions of learning endowed and fostered by private contributions.

It is clearly inferable from the terms of the act creating this college that the trustees were expected to receive financial aid from private sources, and that they should charge and collect tuition from those who attended the school. The grant of land was for the purpose of equipping the institution with only a portion of the means necessary to its establishment and maintenance. The state reserved no supervision over the conduct of its business affairs; nor did it make any provisions for the support of the college in future. It must have been contemplated that the trustees and officers should assume the prerogatives and exercise the rights and privileges incident to a private corporation, which must provide its own means of subsistence. This, however, is inconsistent with the idea that the college was to be exclusively, or substantially, a governmental agency. The fact that the corporation had no capital stock, and that the incorporators were to receive no financial benefit from its operation, does not make the concern a public agency; neither is this accomplished by the grant of state aid in the way of land donations. Railroad companies are incorporated bodies, and many of them have at different times received liberal grants of public lands from the government; yet railroads are not for that reason converted into governmental agencies. The trustees are not public officers acting within prescribed limitations, holding for a specified term. On the contrary, they all hold till death or resignation, and select their own successors. The law does not require the school to be open to the public for the admission of all or of any designated class of students; neither is there any restriction on the right to charge tuition for those who attend. That the college cannot be regarded as any part of the present free school system is evident to the most casual observation. A reading of the statute by which the grant of the lands was provided for shows that the state intended to vest the corporation with the fee-simple title to the four leagues, when these were segregated from the public domain. The lands themselves were not to be held in trust; but the funds realized from their sale were to be applied in a designated manner, and for a specific purpose. By this grant the republic intended to completely divest itself of all title or dominion over the property, and to clothe the trustees with complete ownership. They might sell it in any manner and at any time they saw fit. No right was reserved to control their actions in any respect with reference to the expenditure of the funds realized from such sales, or the management of the institution. The rights of the state, with reference to the execution of this trust in the manner contemplated in the grant, were the same as those generally reserved to any private donor over funds given for a similar purpose.

It was evidently intended that the trustees should hold other property, over which the republic could claim no control, and necessarily they would be entitled to assert many, if not all, of the rights of a private corporation. Even counties, which are designated as subdivisions of the state, are endowed with some of the attributes of private corporations with reference to their property holdings. Milam County v. Bateman, 54 Tex. 164; State v. Foley, 30 Minn. 357, 15 N. W. 377. In the first case cited above, the Supreme Court of this state recognized the right of the state to withdraw from the counties the political rights and

privileges which had theretofore been granted by legislation, but denied its power to divest them of their property rights. The court said: "Such rights, as a general rule, are protected by the same constitutional guaranties which shield the property of individuals. * * * Even though the state itself may have donated the property, it thereby becomes such vested rights as will be protected." The property there under consideration was a portion of the school lands granted by the act of 1839 to the county of Milam for educational purposes. Continuing, the court again says: "In relation to these school lands, the counties, though agents for the state, may be compared to agencies coupled with an interest, which cannot be revoked at the pleasure of the principal." The result of the decision in that case was to hold that the state could not, by an act of the Legislature, deprive the county of its title to any of the lands which it had acquired in conformity with law, because such legislation would impair a vested right.

It certainly will not be contended that the trustees of the College of De Kalb can claim a more intimate identification with the state's ownership of lands, or more of its sovereign immunity from the operation of the statutes of limitation, than can be invoked by the counties with respect to the lands granted to them for free school purposes. As we have seen, as far back as 1856, and continuously down to the present time, there has been an express statutory exception in favor of the lands held by counties for purposes more completely devoted to a public use than those held by the appellants in this instance. The fact that the Legislature deemed it necessary to expressly exempt the county lands from the general provisions of the statute of limitation furnishes us with a legislative construction of that statute. This construction is that, without such an express exception, adverse possession would be available against the counties. If available against counties holding lands for public free school purposes, upon what ground could we say it is not available against a corporation less identified with the state, having more distinct personal and private rights, and holding lands granted for building and equipping a college over which the state can exercise no control? The authorities cited by counsel for appellant do not support their contention.

The judgment of the district court is affirmed.