THE STATE *v.* THE TRUSTEES OF THE VINCENNES UNIVER-
SITY.

May Term,
1854.

THE STATE
*v.*
THE TRUS-
TEES OF THE
VINCENNES
UNIVERSITY.

A corporation can not be dissolved by a loss of members, so long as sufficient remain to continue the succession and supply vacancies.

A surrender of a charter by a corporation may be presumed from a neglect, for a long period of time, to choose corporators and to exercise the corporate franchises.

That presumption, as to the *Vincennes* university, is rebutted, in the present suit, by acts of the legislature recognizing the continued existence of that corporation.

The territorial act incorporating the trustees of the *Vincennes* university, contained a provision that the places of any of the trustees who should resign, remove from the state, die, or wilfully absent themselves from three stated meetings, should, from time to time, be supplied by the board at their stated meetings, which should be held on the first *Mondays* of *April* and *October* of every year, and at such other times as the board should direct, by electing one for every two of those whose seats might be vacated, so that the whole number should not be less than fifteen, after which time one trustee should be elected at the stated meeting above mentioned, to supply every vacancy that might so happen. A majority of the trustees, by the act, constituted a quorum.

*Held,* that the failure to hold meetings would not, of itself, dissolve the corporation.

*Held,* also, that the removal of particular members from the state, or their failure to attend for three successive meetings, would not, of itself, vacate their seats; nor would absence, in any event, except where it was wilful, and an opportunity was afforded them to be heard.

But, *held,* that such removal or wilful absence of such members, would be grounds on which the remaining trustees, after affording such members an opportunity to be heard, might vacate their seats by electing others in their stead.

A member of a corporation can not be disfranchised, nor an officer removed, without the agency of a tribunal competent to investigate the cause and pronounce the sentence of the loss of right. The office is not vacant by neglect or abuse; but an act done, or the exercise of power, is requisite to work the forfeiture, and determine the title to the office.

Where the charter of a corporation prescribes the terms under which the power of amotion is to be exercised, they must be pursued. But where the organic law is silent, the corporation itself possesses the inherent power to ascertain and declare the forfeiture, either of franchise or office.

*Note.*—The opinion given on overruling the petition for a rehearing in this cause, was delivered on the 6th of *November*, 1854, but is inserted immediately after the opinion of the Court upon which the judgment was pronounced, by the request of the Court; and the *syllabus* includes the points decided in both opinions.

May Term,
1854.

THE STATE
v.
THE TRUS-
TEES OF THE
VINCENNES
UNIVERSITY.

If the rule that a judicial sentence of forfeiture must be shown against a corporation, where the question arises collaterally, does not apply where the state is sued by a corporation, still a state of facts must at least be shown, which would induce such sentence in a direct proceeding.

The part of the act of 1838 appointing trustees of the *Vincennes* university in the places of a part of those then existing, was validated by the acquiescence of the latter.

A private corporation may have charge of an interest of so public a concern as to render its charter a public act.

The act of 1838 entitled "an act relative to the *Vincennes* university," (Local Laws 1838, p. 281), is a public act.

That act was a waiver of all forfeitures of the franchises of said corporation, if any had before occurred.

The proviso in said act, that it should not be construed to give the trustees of the *Vincennes* university the *Gibson* township of lands, or its proceeds, did not divest that corporation of any rights it possessed.

In 1807, and afterwards, the title and possession of the *Gibson*-township of lands were in the *Vincennes* university, and the state had knowledge of the fact. The present suit was commenced in 1846. In 1820 the legislature passed a resolution appointing a superintendent to collect the rents of said lands; in 1822 an act was passed providing for the sale of said lands; and in 1827 an act was passed appointing commissioners to make sale of said lands. *Held*, that these proceedings did not constitute an ouster of the university.

Where in a suit to establish a title to real estate, the plaintiff proves a title and possession in himself, and also shows a possession by the defendant, but not of twenty years next before the commencement of the suit, and the defence is a twenty years' possession, the burden of proving such possession is upon the defendant.

The act of 1846 to authorize the trustees of the *Vincennes* university to bring suit against the state, &c., did not authorize the state to set up in defence the statute of limitations.

Where the state, by her legislature, makes a contract with an individual, which is within the scope of her authority, the contract is to be executed in good faith, according to the understanding and intention of the parties when it was made.

The act of 1847, allowing the statute of limitations to be pleaded to the bill in the present case, having not been assented to by the *Vincennes* university, and being in violation of the contract entered into by the state with said university by the act of 1846, was void.

The act of 1846 to authorize the trustees of the *Vincennes* university to sue the state, &c., admitted the ouster of said trustees by the state. The bill did not allege an ouster, but the state did not object to the bill on that account in the Circuit Court, and she made said act a part of her answer. *Held*, that if the bill was defective for not alleging such ouster, the defect was cured by the answer.

ERROR to the *Marion* Circuit Court.

PERKINS, J.—In 1807, the *Vincennes* university was a legally existing corporate body, and was possessed of the lands constituting *Gibson* township in this state, under a grant from congress, and an act of the legislature of *Indiana*. So far, the Supreme Court of the *United States*, by the decision of a majority of its members, have determined in this case; and by that decision we are bound. *The Trustees of the Vincennes University* v. *The State of Indiana*, 14 Howard 268.

That township of land was designed to produce, by its sale, a fund for the support of said university. Subsequently the state assumed the ownership of the lands composing said township, sold them, and appropriated the proceeds to the support of another institution of learning, the state university at *Bloomington*. In 1844, the *Vincennes* university, denying the validity of the titles of those who had purchased from the state, brought ejectments against them, which were pending in 1846, when the legislature authorized the state to be sued for the moneys derived from the sale of the lands, substituting herself in effect as defendant in the places of the purchasers, upon an agreement that the suits against them were to be dismissed; the act authorizing the suit against the state specifying that the state should plead such defences as would "present the case on its merits alone," but that the state should not be prevented from contesting the then corporate existence of the *Vincennes* university.

Pursuant to said act, the present suit was instituted in the *Marion* Circuit Court, in which a decree upon bill, answer, and proofs, was rendered against the defendant.

The state here seeks to reverse that decree, and asserts,

1. That no such corporation as the *Vincennes* university existed at the filing of this bill.

In the territorial code of laws of 1807, p. 439, is found an act creating the corporation of the trustees of the *Vincennes* university, and authorizing it to exist "forever." The act contains this section:

"*Be it enacted,* That the places of any of the said trus-

*May Term, 1854.*

THE STATE
v.
THE TRUSTEES OF THE VINCENNES UNIVERSITY.

*Thursday, May 25.*

May Term,
1854.

THE STATE
v.
THE TRUS-
TEES OF THE
VINCENNES
UNIVERSITY.

tees who shall resign, remove from the territory, die, or wilfully absent himself or themselves from three stated meetings, shall from time to time, be supplied by the board of trustees at their stated meetings, which shall be held on the first *Mondays* of *April* and *October*, yearly and every year, and at such other times as the said board of trustees shall direct, by electing one for every two of those whose seats may be so vacated, so that the whole number shall not be less than fifteen, after which time one trustee shall be elected at the stated meeting above mentioned, to supply every vacancy that may so happen."

A majority of the trustees, according to the act, constituted a quorum to do business.

The state now claims that said corporation had ceased to exist, through the failure of the trustees to hold semi-annual meetings, through the absence of members from said meetings, and by the death and removal of the members of the trustee board.

It is not pretended that the government has ever proceeded against the corporation for mis-user or non-user of franchises, and procured a judicial sentence of forfeiture; and the general rule is well settled, that a plea to an action by a corporation that the charter is forfeited, must show that the forfeiture has been judicially declared in a suit for that purpose at the instance of the government. *John* v. *The Farmers' and Mechanics' Bank*, 2 Blackf. 367.—Ang. and Ames on Corporations 507.—*Sewell's Fall Bridge* v. *Fisk and Norcross*, 3 Foster's N. H. Rep. 171.

But it is said there are some exceptions to this rule, as in the case of a surrender of the charter, and in the case (of which the present is claimed to be an example) where the body of the corporation, or an integral part of it, is lost by a failure of the members composing it. In this latter case, however, Courts have sometimes spoken of the corporations as being suspended rather than dissolved, the government being able, by a new appointment of officers, to re-invigorate without re-incorporating them. Ang. and Ames on Corp. 653. And Judge *McLean*, in his opinion in this case, 14 Howard, *supra*, applies the doctrine to the

*Vincennes* university. But however this may be, the law
is well settled, that no loss of members destroys a corpora-
tion, so long as a sufficient number remain to continue the
succession and fill up the vacancies. Ang. and Ames,
*supra.*

In the case before us, eight trustees, as we have seen,
constituted a quorum to do business, to fill vacancies; and
the evidence nowhere shows that the trustees of the *Vin-
cennes* university were ever actually reduced, by declared
vacancies, below that number; and, hence, it does not
show that the succession of said corporation has ever been
broken, or the power to fill vacancies lost.

The failure to hold meetings would not, *per se*, be a dis-
solution of the corporation; nor would the failure of par-
ticular members to attend for three successive meetings,
*per se*, vacate their seats; nor would their removal simply
from the state. These acts would be grounds on which
the remaining trustees might vacate the seats of such ab-
sent members, by electing others in their places. But if
no such election took place, the negligent members might
still appear in their seats as trustees, and if recognized as
such by their colleagues, their acts would be valid. In-
deed, simple absence for three meetings was not, by the
charter, a ground for vacating the seat of a member. It
was wilful absence that constituted such ground, and this
would present a question to be tried on an attempt by the
remaining trustees to insist on a vacancy for such cause.

The evidence in the case, then, showing a corporation
once regularly organized, and acting under a perpetual
charter, and nowhere disclosing a loss, by death, or any
legal mode, of such a number of the trustees as to deprive
that body of the power of filling vacancies, and continuing
itself, it does not show a dissolution of the corporation of
the *Vincennes* university. But did the evidence show the
state of facts above denied to be shown, still, no proceed-
ings were instituted to obtain, on behalf of the state, a
judicially declared forfeiture, but, in 1838, the legislature
by, as we regard it, a public act, recognized the existence
of said corporation, supplied trustees in the places of such

May Term, 1854.

THE STATE v. THE TRUSTEES OF THE VINCENNES UNIVERSITY.

as had died, or absented themselves, thus vacating the seats of the absent, and authorized the corporation to continue in its sphere of action. This act was a waiver of all previous forfeitures, and none is shown to have occurred since. It is true, this latter statute provides that it shall not be construed to give the trustees of said *Vincennes* university any right to the *Gibson* township of land or its proceeds; but it does not, if it could, require that it should be so construed as to take away any rights said university might possess; and, hence, it leaves the rights of all parties just as they would have been if the proviso had not been enacted.

We come to the conclusion, then, that the *Vincennes* university existed as a corporation at the commencement of this suit.

2. The state also relies upon the statute of limitations.

Conceding, for the present, that the state has the right to set up this defence, we will examine the question as presented by the record.

It is shown that in and subsequent to 1807, the title and possession of the *Gibson* township lands were in the *Vincennes* university, and that the state knew the facts. This suit was commenced in 1846; and, of course, the state, or those under her, must have entered into possession in 1826 to have held the twenty years required by the statute of limitations. Was such possession taken?

It appears that in 1820 the legislature passed a resolution appointing a superintendent to collect the rents of the lands; that in 1822 an act was passed providing for the sale of said lands; and that in 1827, by another act, commissioners were appointed to make sale of said township of lands, &c.

These acts might, perhaps, be regarded as a sufficient taking of possession of lands of which the title was in the state, or, perhaps, of those the title to which was in another, but which were entirely vacant, though we do not so decide; but they constitute, of themselves, no possession, no *ouster*, against a proprietor in actual possession. If my neighbor resolves publicly that my land is his, and

appoints a person to collect rents, those acts do not oust me of possession, and make the commencement of a possession in him that shall deprive me of title. Nor would his sale of my land and the reception of the purchase-money. Such a sale, while I was in possession, would be void, confer no title nor right, nor be of any service till the purchaser actually ousted me, and then only to the extent of such ouster. We must look, then, for the time when the state, or her grantees, actually took possession; in other words, we must ascertain the actual ouster of the rightful owner.

There is proof that the *Vincennes* university was ousted in 1844, but as to any time prior the evidence is very unsatisfactory, and we would not presume, in the absence of evidence, that the state did seize what did not belong to her. Mr. *Judah*, the only witness testifying on the point, says he believes no possession was taken by or under the state till after 1827. He resided at *Vincennes*, was a trustee of the university there, and had as good opportunities of knowing, and as much interest in knowing, as most persons. His testimony is not conclusive, but it is all there is, was submitted to the Court, and its preponderance is to show that the *Vincennes* university was not ousted till after 1827. Upon this evidence the Court must act.

The consequence is, that the record does not sustain the defence of the statute of limitations. If the state, or those under her, took possession earlier, she should have shown the fact. The defendant to this bill would necessarily have known better than the plaintiff when the wrongful possession commenced. The university proved her title and possession, and a subsequent possession by the defendant within twenty years. If the state wished then to show that her entry was first made earlier, it was her right, and she should have done it.

This case differs widely from *Nepean* v. *Doe*, 2 Mees. and Welsby 894, which is so strongly urged upon the attention of the Court. In that case one *Knight* was the owner of a life-estate which had passed, with the possession, to *Nepean*. The lessor of the plaintiff owned the reversion and had a

May Term,
1854.

THE STATE
v.
THE TRUS-
TEES OF THE
VINCENNES
UNIVERSITY.

right to oust *Nepean* and enter upon his reversion as soon as *Knight* should die; and would be barred of such right should he omit to make such entry for twenty years after *Knight's* death. *Knight*, about the commencement of the year 1807, went to *America*, and was never heard of afterwards. He would be presumed to be dead, therefore, at the commencement of the year 1814. Twenty years from that time would be the first of *January*, 1834. The suit was commenced on the 18th of *January*, 1834, eighteen days after the twenty years might have expired from *Knight's* death. These facts the plaintiff himself proved, and being all the evidence in the cause, they proved the plaintiff to be barred by the statute. But suppose the suit in the case had been commenced one year earlier, thus being within the time, on the evidence given the plaintiff would have recovered; still, it will not be doubted that had the suit been instituted as supposed, after the plaintiff had proved on the trial *Knight's* absence, unheard of, so far as his evidence went, for seven years, and thus raised the presumption of his death at that time, the defendant might, if able, and, to have saved his case, should have proved the fact that *Knight* actually did die before he had been absent five years, thus establishing that his possession had run more than twenty years from *Knight's* death, and thereby defeating the suit.

So the state, in this case, should have made proof, if she could, in regard to her possession against the university.

We will remark, that we do not regard this case as fairly presenting the question of the construction of our statute of limitations as to the recovery of real estate, touching the burden of proof.

But if we are wrong upon the question of proof as to the defence under the statute of limitations, the error works no injury to the state, as we are clear that she had no right to set up such a defence. As has been stated, the record shows that ejectment suits had been instituted in 1844, and were pending in 1846, when the following act, approved *January* 17, 1846, entitled "an act to authorize the trustees of the *Vincennes* university to bring suit against

the state of *Indiana*, and for other purposes," was passed, viz.:

May Term, 1854.

THE STATE
v.
THE TRUS-
TEES OF THE
VINCENNES
UNIVERSITY.

"Whereas it is represented to this general assembly that the board of trustees for the *Vincennes* university claim title to the seminary township of lands in *Gibson* county, known as township number two south, of range number eleven west, most of the lands in which township have been sold by the state, to her citizens: And whereas it is desirable to have the right of said township of lands tested by one suit, to be brought against the state, instead of a great number of suits against the individual owners of said land, who purchased the same in good faith from the state, not doubting but that their titles were good: Therefore,

" SECTION 1. *Be it enacted by the General Assembly of the State of Indiana*, That the board of trustees for the *Vincennes* university, be and they are hereby authorized to file a bill in chancery, in the nature of an action of deseizin, in the *Marion* Circuit Court, against the state of *Indiana*, for the purpose of trying the right of the said board of trustees to said township of lands.

" SEC. 2. That said *Marion* Circuit Court shall have full and complete jurisdiction to try said suit between said parties, in the same manner as if the subject-matter of said suit, as well as the parties thereto, were within the jurisdiction of said Court.

" SEC. 3. That upon process being served on the governor of the state, in said suit, he shall cause an appearance on behalf of the state to be entered, and employ counsel to defend the same.

" SEC. 4. That if upon a final hearing of said suit, the same shall be decided in favor of said board of trustees for the *Vincennes* university, upon said board of trustees relinquishing to the state, for the use and benefit of the purchasers thereof, so much of said township of land as the state hath sold, then and in that case, there shall be set apart to said board of trustees, the funds arising from the sale of said township of lands, as also the amount yet due from the respective purchasers thereof.

May Term,
1854.

THE STATE
v.
THE TRUS-
TEES OF THE
VINCENNES
UNIVERSITY.

"SEC. 5. That if said board of trustees institute a suit against the state of *Indiana*, in pursuance of the provisions of this act, it shall be deemed and taken as an election, on the part of said board, to look to the state and said fund for compensation for their claim for said township of land, if successful.

"SEC. 6. Said *Marion* Circuit Court shall have full and complete jurisdiction to try the right of said board of trustees for the *Vincennes* university, to said township of lands, and for that purpose, and for the purpose of entering a final decree in the premises, may consider the state of *Indiana* as standing in the place of the present claimants now in possession of said lands by virtue of purchases from this state.

"SEC. 7. The state of *Indiana* may either file one or more pleas as in actions at law, as a defence to such suit, or. may file an answer without oath, therein setting forth the matters of defence, as may be deemed advisable by the governor and counsel by him employed, so as to present the case on its merits alone.

"SEC. 8. The final decision of such action, whether in favor of or against said board of trustees, shall be final and conclusive in the premises, reserving, however, to each of the parties to said suit, the right of appeal, as in other cases.

"SEC. 9. Nothing in this act shall be so construed as to prevent the state of *Indiana* from contesting the present corporate existence of the trustees of said university.

"SEC. 10. This act to take effect and be in full force from and after its passage."

On the passage of said act, the election mentioned in section 5 was made, the ejectment suits were dismissed, and the present one instituted.

The transaction we regard as a contract between the parties, requiring, among other things, that the present suit should be tried on its merits alone, and that no defence should be set up which would preclude such a trial, should the plaintiff appear to be an existing corporate body. The counsel for the state insist that the plea of the statute of

limitations does present the case upon its merits. We think it does not, at least within the understanding of the parties when the act above copied was passed. They plainly understood that the suit was to be tried on the questions of the existence of the university corporation, and her ownership under the original grant of the *Gibson* township of land. Now the plea of the statute of limitations presents an issue, it is true, the trial of which may bar the suit entirely, and thus cover the merits, not, however, by securing the trial of the cause upon its merits, but by precluding an inquiry into those merits.

May Term,<br>1854.<br><hr>THE STATE<br>v.<br>THE TRUS-<br>TEES OF THE<br>VINCENNES<br>UNIVERSITY.

The university must have so understood the act of 1846, else why would she have dismissed suits commenced in 1844, to commence another in 1846, by which she would hazard every thing if the limitation was to be set up? The succeeding legislature so understood that act, and, hence, in 1847, after the ejectment suits were dismissed and this suit commenced, passed an additional one allowing the limitation to be pleaded. To that act the university never agreed; it was an attempted violation of the contract of 1846, and was void.

We come, therefore, to the conclusion that the decree below must be affirmed with costs.

*Per Curiam.*—The decree is affirmed with costs.

*O. H. Smith, G. G. Dunn, D. McDonald, I. Blackford, M. G. Bright,* and *J. Morrison,* for the state.

*S. Judah,* for the defendants.

————◦•◦◦———

THE STATE *v.* THE TRUSTEES OF THE VINCENNES UNIVER-
SITY.