Nov. Term,
1856.

THE CITY OF
LOGANSPORT
v.
DUNN.

THE CITY OF LOGANSPORT v. DUNN and Wife.

The laying out of an addition to a city by the owner of adjacent lands; the recording of a plat thereof; and the sale of lots with reference to such plat, operate as a dedication to public use, of all streets, alleys, and other grounds, clearly designed to be so appropriated.

The designation upon such plat, of a lot or space, as a site for a church, seminary, market, or common, operates as a dedication of the same to the public, for such purpose.

The words, "public square," have, in this State, acquired a definite legal meaning; and when written or printed in a proper place on the plat of a town designed for a county seat, the place so designated is set apart as the site of the court-house, and other county buildings.

The owner of lands may lay them off in town lots and publish a map thereof, without being concluded to any extent; but so soon as he sells lots with reference to such map, other rights intervene, and the dedication of all grounds designated upon such map for public use, then becomes effectual.

A single declaration, made by the owner of land, that he intends to dedicate any portion of it to public use, unconnected with some act in furtherance of that intention, will not amount to a dedication; much less will such declaration amount to a dedication when accompanied, or immediately followed, by an act wholly inconsistent therewith.

If a single act of the owner of land be relied on to establish a dedication of the same to the use of the public, its character must be so unequivocal as to require neither lapse of time nor user by the public, to aid the presumption of dedication, arising from such act.

The facts that an administrator makes and records a town plat of lands belonging to his decedent, designating thereon a given square, as "Spencer Square;" and that he subsequently sells lots by such plat, do not of themselves operate as a dedication of that square to the public.

Mere public reputation for any length of time will not, unless connected with some act of the owner of lands, evincing his intention to dedicate the same, or with the use, control, or occupancy of the same by the public, operate as a dedication.

Adverse possession is never proved by mere reputation.

Where the evidence is conflicting, an appellate court will not disturb the verdict of a jury.

The giving of an erroneous charge where there was no evidence on which to predicate it, and where the verdict is right upon the evidence before the jury, cannot avail either party on appeal as error.

Saturday,
December 13.

APPEAL from the *Cass* Circuit Court.

GOOKINS, J.—This record presents the question of the dedication of a public square.

The city of *Logansport* is situated at the confluence of the *Wabash* and *Eel* rivers, on a point of land between the two streams. The town originally extended from the junction of the rivers, eastward to fifth street, and was laid out by one *Chauncey Carter*. In 1835, General *John Tipton* laid out an addition to the town, extending eastwardly from fifth to ninth street, a plat of which was duly recorded. In 1838, he caused to be published a lithographic map of *Logansport*, and its surroundings, which embraced the original town and the addition above mentioned, and represented the town as extended still further east. A marginal reference in the map stated that the ground between fifth and ninth streets was laid off by General *Tipton*, in 1835 and 1836, and that the ground east of ninth street was laid out by *S. S. Tipton* and *James Dunn*, in reference to which the proof was that General *Tipton* sold this ground to *S. S. Tipton* and *Dunn*, by a verbal contract, but that afterwards the contract was cancelled. In the latter extension, a block is represented on the map as "*Spencer Square*," which is the ground in dispute. No plat of this extension was recorded in the lifetime of General *Tipton*. After his death, which occurred *April*, 5, 1839, his administrators, finding a deficiency of personal assets to pay the debts of the estate, made and recorded a plat of the ground covered by the last enlargement, but not in accordance with the lithographic map; the position of *Spencer Square*, however, was the same in both, and was designated in like manner on the plat made by the administrators. Under an order of the Probate Court, they sold at public auction, in 1840, the lots in this enlargement, for the purpose of raising money to pay debts, and the sales were confirmed. In *July*, 1852, a voluntary partition was made between the heirs of General *Tipton*, who mutually conveyed to each other, in which partition *Spencer Square* was assigned to Mrs. *Dunn*, a daughter of General *Tipton*, and wife of *Thomas S. Dunn*, who are made defendants. Immediately after this partition, the defendants caused *Spencer Square* to be

enclosed by a fence, claiming it as their own. In *March*, 1853, the city of *Logansport* commenced this suit against *Dunn* and wife, by bill in chancery, to establish their claim to *Spencer Square* as public ground, alleging that it had been dedicated to the public use. The answer was filed under the present code. Issues were formed, which were tried by jury, who found a special and general verdict for the defendants, on which there was judgment, from which the city appeals.

Among other evidence given at the trial, it was proved that *Spencer Square* was so named and called by General *Tipton*, in his lifetime, in honor of his father-in-law, Captain *Spencer*, who fell at the battle of *Tippecanoe;* that in 1838, he caused his wife to be buried there, stating at the time that he intended to erect a family vault upon it, and to remove the remains of his wife to the vault; and, at the same time, stated that it was to be public ground, and that no houses were to be built upon it. A military cadet, nephew of General *Tipton's* wife, was also buried there, and a marble monument was erected to his memory, by his classmates, upon the square; but whether before or after General *Tipton's* death, is left in some doubt. General *Tipton*, at his death, was buried there, and subsequently his son's wife and two children. The graves were enclosed, but the remainder of the square was left open, and was occasionally used, as were other grounds similarly situated, once for a military parade, and at other times for Fourth of *July* celebrations, being covered with trees, and furnishing an agreeable shade, rendering it suitable for such occasions. Other adjacent grounds belonging to the estate were in the same condition. *S. S. Tipton*, one of the heirs, was proved to have said, upon one occasion, that *Spencer Square* was to be public ground. He was the only adult at the time of the sale by the administrators—the other heirs being of various ages, and one was not of age when the partition was made in *July*, 1852.

On the question of intention, much evidence was

given on both sides. On the part of the plaintiffs several witnesses, who had been for many years residents of *Logansport*, testified that *Spencer Square* had, from about the time of the publication of the map, been generally known and reputed to be public ground; but they could not say that they had heard it so called in presence of General *Tipton*, or the heirs, or administrators; that at the time of the public sale of lots by the administrators, it was so generally understood by the bidders, and others present, and one witness thought it had been so proclaimed by the auctioneer; that at that sale, lots were purchased fronting on the square, the purchasers understanding that it was to be public ground. Some of the witnesses who had purchased lots at that sale, testified that they had contributed towards the expenses of this suit. The auditor testified that, until recently, *Spencer Square* had not been assessed for taxation; but that property subject to tax was frequently omitted in the assessment. On the other hand, there was testimony that General *Tipton* had, until his death, claimed and exercised acts of ownership over the ground; that he had once prosecuted a person for taking sand from it. Others who were at the administrator's sale heard nothing of *Spencer Square* being considered public ground, and testified that it was not so proclaimed. The administrators testified that they had not dedicated the ground to the public use, nor authorized the auctioneer so to proclaim it; and several old citizens of the town had never heard that *Spencer Square* was considered public ground, but had always understood it to be private property.

It is settled law that the laying out and recording of a plat, and the selling of lots with reference to it, operate as a dedication to the public of streets, alleys, and other grounds clearly designed to be appropriated to the public use. *Indianapolis* v. *Croas*, 7 Ind. R. 9.— *Haynes* v. *Thomas*, *id*. 38. A designation on the map of a lot or space for a church, seminary, market, or common, will also have the effect of a dedication for

Nov. Term, 1856.

THE CITY OF LOGANSPORT
v.
DUNN.

the use indicated. In this State, the words "public square" have acquired a legal meaning by use, and are evidence, when used in a proper place, on the map of a town designed for a county seat, that the ground is set apart as a place for the erection of a court-house or other county buildings. *Westfall* v. *Hunt*, at the present term (1). Whether by inserting the words, "*Spencer Square*," on an open space on the map of the town, the proprietor intended to dedicate the ground to the public use, was a question of fact to be found by the jury. The evidence on this point was conflicting, and was obviously of such a character that an appellate court would not be authorized to disturb their verdict, whichever way it might have been. We are, therefore, only left to inquire whether they were rightly instructed, and what was the legal effect of their special verdict.

The following facts were specially found by the jury: 1. That General *Tipton* did not, in his lifetime, lay out into lots that part of *Logansport* indicated by the lithographic map, 2. That he did cause said map to be engraved and published. 3. That he designated thereon the place called *Spencer Square*. 4. That the administrators made and recorded a plat of the addition. 5. That *Spencer Square* was delineated thereon. 6. That they sold lots as laid out and designated in said addition, which sales were confirmed. 7. That it was not generally understood by the purchasers of lots at the administrators' sale that *Spencer Square* was a public square. 8. That it was not known, reputed, and generally understood by the purchasers of said lots, the inhabitants of *Logansport*, and the public generally, that *Spencer Square* was public ground. 9. That since it had been known as *Spencer Square*, it had been generally understood and reputed to be private property. 10. That since the sale of the lots by the administrators, they and the heirs of *Tipton*, had had control of *Spencer Square*. 11. That it had not been used as public ground. 12. That General *Tipton*, and a part of his family, were buried there. 13. That it was his intention that *Spencer Square*

Nov. Term,
1856.

THE CITY OF
LOGANSPORT
v.
DUNN.

should be a private burial ground. 14. That he exercised sole control over it until his death. 15. And since his death, his administrators and heirs. 16. The same in substance as the 8th. 17 and 18. Immaterial. 19. General *Tipton* did not declare in his lifetime that *Spencer Square* was to be public ground. 20. Immaterial (a question of law, not of fact). 21. The administrators did not intend, by making the plat, to dedicate *Spencer Square* to the public.

The foregoing, with a general verdict for the defendants constitute the finding of the jury.

Upon the prayer of the defendants, various instructions were given to the jury, some of which may be conveniently considered together. They were instructed as follows:

"Where the intent to lay out a town is formed, but abandoned, and the plat is not recorded, a sale of a part of the premises does not give the purchasers the right of streets, alleys, or squares, designated on such unrecorded plat.

"More evidence is requisite to establish a dedication of a square to the public, than the simple making and circulation of a map."

This instruction we think correct. The publishing of a map by the owner, of ground proposed to be made the site of a town, does not conclude him to any extent.

It is only when lots are sold with reference to such plat that other rights intervene. When that occurs, the dedication becomes effectual as to those grounds which are devoted to the public use.

The jury were further instructed that the admission of General *Tipton* to the witness *Isaac Bartlett*, on the occasion of the burial of said *Tipton's* wife, that he intended to have his family buried on that square, and to erect a family vault there, and that said square should be public ground, was not sufficient of itself, if they believed such admission proved, to establish a dedication of said ground to the public.

A single declaration made on one occasion to one per-

son of an intention to devote a piece of ground to the public use, unconnected with any act in furtherance of the object, would certainly not amount to a dedication, especially when the declaration was accompanied by an act apparently inconsistent with the purpose declared. If a single act be relied upon to establish a dedication, it must be of such an unequivocal character, as that lapse of time or user would not be required to aid the presumption of dedication.

These instructions contemplate the action of General *Tipton*, with reference to the fact of dedication. In regard to the action of the administrators, the following instruction was given at the instance of the defendants:

"The mere act of making and recording the plat marked exhibit B. with *Spencer Square* designated thereon, and selling lots by said plat, does not of itself and without other concurring circumstances operate as a dedication of the square to the public."

We will not stop to inquire whether the administrators had any power to make the dedication. The general principle certainly is, that it can be done only by the owner of the fee. 2 Greenl. Ev. s. 663. We think the instruction correct on another ground. The words "*Spencer Square*," did not, unexplained, import that the ground was to be public. They are not like street, common, market place, public square, seminary lot, &c., which of themselves, when marked upon an open square or space upon the map of a town, import that the ground is set apart to a public use.

Upon the question of lapse of time and user, the following instructions were given at the instance of the defendants:

"Public repute, if general and uncontradicted for a period of fourteen years, that this square was a public one, would not of itself divest the original proprietor of his control, or operate as a dedication.

"To found a title to this property on mere user, the public must have been in possession twenty years."

In regard to the first of these, it is sufficient to say

that mere public repute for any length of time, uncon-
nected with any act on the part of the owner, evincing
an intention to dedicate, or any occupancy, use, or con-
trol by the public, would not operate as a dedication.
Adverse possession is never proved by mere reputation.

We need not inquire whether the principle asserted
in the other instruction is correct in law or not. If it
were erroneous, the judgment would not be reversed,
for the reason that there was no evidence which could
have justified the jury in finding an user by the public.
The most that is proved is, that on one occasion there
was a military parade upon *Spencer Square*, and that,
like other grounds lying open about *Logansport*, had
been occasionally used for public celebrations on the
Fourth of *July*. The practice of our people to repair to
some convenient woodland to celebrate that day is
almost universal. The custom is as well known as
other matters of public history. In the vicinity of
most towns there are favorite resorts which are used for
such occasions; and it would probably be difficult to
find a citizen who would refuse the use of unenclosed
grounds for such an occasion. This is no such appro-
priation by the public as would authorize a jury to find
an user. The city of *Logansport* is not shown to have
exercised the slightest control or authority over *Spencer
Square*, for any purpose whatever. Besides this the
10th, 11th, 14th, and 15th specifications of the special
verdict are wholly inconsistent with the user supposed.
The 11th in particular declares that the square had not
been used as public ground.

Several instructions were given by the Court of its
own motion, they were mostly favorable to the plaintiff,
and none of them, we think, asserting principles of law
of which the plaintiff can complain, moreover, they
were not excepted to, and cannot be successfully relied
on in error.

*Per Curiam.*—The judgment is affirmed with costs (2).
*H. P. Biddle* and *B. W. Peters*, for the appellant (3).
*D. D. Pratt* and *S. C. Taber*, for the appellees (4).