**ST. JOHN TOWN BOARD,**
Appellant–Defendant,

v.

**Gene LAMBERT and Lana Lindsey,**
Appellee–Plaintiffs.

No. 45A05–9905–CV–221.

Court of Appeals of Indiana.

March 28, 2000.

---

Timothy F. Kelly, Steven J. Sersic, Law Offices of Timothy F. Kelly and Associates, Munster, Indiana, Attorneys for Appellant.

P. Jeffrey Schlesinger, Crown Point, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

The St. John Town Board ("St.John") appeals the trial court's denial of its summary judgment motion, and the judgment entered after a bench trial in favor of Gene Lambert and Lana Lindsey Howard[1] (collectively referred to as the "plaintiffs").

We affirm.

1. We note that at the time this case was filed, Lana Lindsey Howard sued under the name "Lana Lindsey." However, at the time this case was before this court, her name was changed to "Lana Howard." We refer to her in this opinion as "Lana Lindsey Howard."

*Issues*

St. John raises the following consolidated and restated issues for our review:

1. Whether the trial court erred in denying St. John's motion for summary judgment because St. John retained absolute sovereign immunity to the plaintiffs' claim for damages; and

2. Whether the trial court erred in denying St. John's summary judgment motion because Lambert was contributorily negligent as a matter of law.

3. Whether the trial court's findings of facts and conclusions of law are clearly erroneous.

*Facts and Procedural History*

The undisputed facts and the facts most favorable to the non-movant reveal that on the evening of February 25, 1992, the plaintiffs visited Howard's grandmother in Schererville, Indiana. While visiting Howard's grandmother, Lambert and Howard consumed several alcoholic beverages. Around 9:30 p.m., the plaintiffs left Howard's grandmother's house for their home in Cedar Lake, Indiana. Lambert was driving his truck and Howard was sitting next to him on the passenger's side of the vehicle. Because it was raining, the road conditions were slick.

As they traveled home, Lambert took a wrong turn at a T-intersection and proceeded toward St. John, Indiana. Thereafter, Lambert turned onto Mallard Lane, a road with which he was unfamiliar. Mallard Lane ends in a cul-de-sac. Lambert drove down Mallard Lane at thirty or thirty-five miles an hour before traveling off the cul-de-sac into a ditch. As a result of the accident, the plaintiffs were injured.

Consequently, on February 25, 1994, the plaintiffs filed suit in the Lake County

Superior Court against the town board of the Town of St. John, Indiana, alleging that St. John was negligent in failing to post signs, erect lights, or install warning devices on Mallard Lane in order to notify the general public that the road ended in a cul-de-sac. On April 29, 1994, St. John filed a motion for summary judgment, which the court later denied on September 30, 1998. Following a bench trial on January 19, 1999, the trial court entered a judgment in favor of Lambert in the amount of $5,050.00, and for Howard in the amount of $15,289.50. This appeal ensued.

### I. Standard of Review for Summary Judgment

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bastin v. First Indiana Bank,* 694 N.E.2d 740, 743 (Ind.Ct.App.1998), *trans. denied.* When reviewing a grant or denial of summary judgment, this court applies the same standard as does a trial court. *USA Life One Ins. Co. v. Nuckolls,* 682 N.E.2d 534, 537 (Ind.1997). Summary judgment should be granted only if the designated evidentiary material shows that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Ind. Trial Rule 56(C); *Hoskins v. Sharp,* 629 N.E.2d 1271, 1276 (Ind.Ct. App.1994). On review, we may not search the entire record to support the judgment, but may only consider that evidence which had been specifically designated to the trial court. *North Snow Bay, Inc. v. Hamilton,* 657 N.E.2d 420, 422 (Ind.Ct.App. 1995). The party appealing the denial of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was erroneous. *See Warner Trucking, Inc. v. Carolina Cas. Ins. Co.,* 686 N.E.2d 102, 104 (Ind.1997). We resolve any doubt about a fact or any inference to be drawn from it in favor of the nonmoving party. *Claxton v. Hutton,* 615 N.E.2d 471, 473 (Ind.Ct.App.1993). Summary judgment should not be used as an abbreviated trial. *Brunner v. Trustees of Purdue Univ.,* 702 N.E.2d 759, 760 (Ind. Ct.App.1998), *trans. denied.*

### II. Common Law Sovereign Immunity [2]

St. John contends that the trial court erred in denying its motion for summary judgment because it was entitled to sovereign immunity under the common law of Indiana.[3] We disagree.

### A. "Governmental Unit"

Our initial inquiry is to determine whether St. John is a governmental unit under the common law. St. John is a legislative body. St. John is comprised of three council members who act on behalf of the Town when they adopt and promulgate zoning ordinances. R. 118. *See* Ind. Code §§ 36–7–4–500, et seq. Thus, St. John is a governmental unit because it is essentially an "arm or extension of a municipality." *See Brinkman v. City of Indianapolis,* 141 Ind.App. 662, 668–69, 231 N.E.2d 169, 173 (1967). Because St. John is a governmental unit under the common law, we must now determine whether it is shielded from suit under common law sovereign immunity.

### B. Abrogation of Common Law Sovereign Immunity

Common law sovereign immunity has long been recognized in Indiana.[4] *See e.g.,*

---

**2.** We note that the Indiana Tort Claims Act provides extensive immunity provisions for governmental units, effectively shielding them from liability even in those cases where a common law duty of care exits. *See* Ind.Code §§ 34–13–3–1 to –25. However, St. John failed to raise the issue of statutory immunity, and thus, we are precluded from addressing this issue.

**3.** We note that St. John argued extensively and designated evidentiary materials at the summary judgment proceeding in support of its proposition that it was entitled to invoke common law sovereign immunity with regard to the plaintiffs' claim. R. 406–20.

**4.** Prior to the adoption of Indiana's 1851 Constitution, the only recognized method of bringing suit against the state was to convince the Indiana legislature to pass an act autho-

*Perkins v. State,* 252 Ind. 549, 552–53, 251 N.E.2d 30, 32 (1969). However, Indiana appellate courts in the last forty years have abrogated common law sovereign immunity in almost all respects.

### 1. Governmental/Proprietary Rule

The first major step toward abrogation of the doctrine of sovereign immunity occurred in 1960, when the Indiana Supreme Court held that local governmental units were immune under the common law from tort liability in the performance of "government functions," but they were not immune from tort liability under the common law with respect to "proprietary functions."[5] *See Flowers v. Board of Comm'rs of County of Vanderburgh,* 240 Ind. 668, 671, 168 N.E.2d 224, 225 (1960). Thereafter, courts were required to determine whether governmental units were performing "proprietary[6] functions," those functions which a unit in its discretion may perform to promote the comfort, convenience, safety, and happiness of citizens, or "government functions," those functions which are essential to the unit's existence, such as dispensing or exercising some element of sovereignty.

Later, the Court abolished the governmental/proprietary rule and held that sovereign immunity was no longer applicable to the state. *Campbell v. State,* 259 Ind. 55, 60, 284 N.E.2d 733, 737 (Ind.1972). The Court abolished the governmen-

tal/proprietary rule in *Campbell* because of the difficulties in distinguishing between "government functions" and "proprietary functions," reasoning that the distinction was best left to the Indiana General Assembly. *Id.* at 736.

The breadth of the language in *Campbell* eliminating sovereign immunity essentially resulted in governmental units being liable for torts in almost all respects as a private individual. The Court reasoned that this end result was just because "[t]he elimination of sovereign immunity means a more equitable distribution of losses in society, rather than forcing individuals to face the total loss of the injury." *Id.* After *Campbell,* all governmental units were bound by a duty to use ordinary and reasonable care under the circumstances, essentially the "duty owed to a private individual." *See Neal v. Home Builders, Inc.,* 232 Ind. 160, 168–69, 111 N.E.2d 280, 285 (1953). Governmental units were bound by this duty, directly and derivatively, under a theory of respondeat superior.

In the past, Indiana appellate courts established several legal principles to assist in deciphering whether governmental units were immune from tort liability under the common law. Recently, the Indiana Supreme Court, recognizing that several areas of confusion had arisen with regard to common law sovereign immunity, clarified the doctrine in *Benton v. City*

---

rizing a particular individual to bring suit. *See State v. Trustees of Vincennes Univ.,* 5 Ind. 77 (1854). When the Indiana 1851 Constitution became effective, such special acts were forbidden. *State v. Rendleman,* 603 N.E.2d 1333, 1335 (Ind.1992). However, Article 4, section 24 of the Indiana 1851 Constitution permitted, but did not require, the state to pass general legislation which would allow an individual to sue the state. *See* Ind. Const. Art. IV § 24. In 1889, the Indiana General Assembly passed the first legislation under this constitutional provision, which allowed individuals with contract claims to sue the state. *Carr v. State,* 127 Ind. 204, 26 N.E. 778 (1891). Although sovereign immunity was not directly referenced in 1851 under the constitution or statute of Indiana, it was adopted from the English common law. Sov-

ereign immunity, as part of the English common law, carried over to the common law of Indiana under the "hierarchy of laws" provision contained in Indiana Code section 1-1-2-1. Also, the Indiana Supreme Court has stated that "the drafters of the 1851 Constitution implicitly recognized sovereign immunity as part of the common law of Indiana." *Rendleman,* 603 N.E.2d 1333, 1335 (Ind.1992).

**5.** The governmental/proprietary rule developed with the establishment of the municipal corporation, an entity that acts like a corporation and a governmental unit.

**6.** We note that "proprietary" has been referred to as synonymous with corporate, quasi-private, ministerial, and commercial activities.

*of Oakland City, Indiana,* 721 N.E.2d 224 (Ind.1999).[7] We will only address the confusion originating from the private duty/public duty dichotomy that has developed in Indiana appellate courts.[8]

2. *Benton v. City of Oakland City*

In *Benton,* the Indiana Supreme Court stated that the earlier decisions after *Campbell* correctly interpreted the phrase "duty owed to a private individual" as nothing more than a "duty to use reasonable care." *Id.* at 228. *See Miller v. Griesel,* 261 Ind. 604, 612, 308 N.E.2d 701, 706 (1974); *Roberts v. State,* 159 Ind.App. 456, 462, 307 N.E.2d 501, 505 (1974). The Court in *Benton* effectively rejected the private duty/public duty dichotomy, which looked to whether "the duty alleged to have been breached was a 'private one' or a 'public one,'" and reaffirmed its earlier holding in *Campbell* that a governmental unit is bound by the same duty of care as a private individual, except in a few limited circumstances. *Benton,* 721 N.E.2d at 230.

■ The Court in *Benton* also listed three circumstances where a governmental unit could invoke common law sovereign immunity, these being: (1) where a city or state fails to provide adequate police protection to prevent crime; (2) where a state official makes an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of a state official for making such an appointment; and (3) where judicial decision-making is challenged. *Id; see Campbell,* 284 N.E.2d at 737. Recently, we held that under the common law enunciated in *Campbell* and reaffirmed in *Benton,* the failure to provide adequate fire protection should be treated as an exception to governmental tort liability. *Gates*

*v. Town of Chandler, Water Dep't.,* 725 N.E.2d 117, 120 (Ind.Ct.App. 2000) (opinion on rehearing). Thus, the current presumption in Indiana is that governmental units are liable for any breach of a duty owed to a private individual except for such claims as a failure to prevent crime, inadequate fire protection, appointment of an incompetent official, or an incorrect judicial decision. *Benton,* 721 N.E.2d at 230; *Gates,* 725 N.E.2d at 118–119. We will now apply the current law of common law sovereign immunity to the facts of this present case.

■ In the present case, the plaintiffs allege that St. John was negligent in its duty to post signs, erect lights, or install warning devices in order to notify drivers that Mallard Lane ended in a cul-de-sac. R. 26. To sustain an action for negligence, the plaintiffs must establish: (1) a duty owed by the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). The existence of a duty is a question of law for the court. *Benthall v. City of Evansville,* 674 N.E.2d 580, 583 (Ind.Ct.App.1996), *trans. denied.* In addition, we balance these three factors in order to determine whether a duty exists: 1) the relationship between the parties; 2) the reasonable foreseeability of harm to the person injured; and 3) public policy concerns. *Indiana State Police v. Don's Guns & Galleries,* 674 N.E.2d 565, 568 (Ind.Ct.App.1996), *trans. denied.*

### C. Common Law Sovereign Immunity in this Case

■ We believe that St. John was not entitled to summary judgment as a matter

---

**7.** The Indiana Supreme Court in *Benton* articulated three concepts with respect to sovereign immunity for governmental units that have generated confusion among Indiana courts: 1) "public duty" versus "private duty"; 2) government "nonfeasance" versus "malfeasance", and 3) whether common law or statutory law, specifically the Indiana Tort

Claims Act, applies in any given case. *Benton,* 721 N.E.2d at 226.

**8.** We note that the Court in *Benton* stated that the extensive protections afforded governmental units under the Act remain in full force and effect, and were not relaxed by the Court's decision. *Benton,* 721 N.E.2d at 231.

of law after applying Indiana common law sovereign immunity to the facts of the present case. As discussed earlier, all governmental units are bound, both directly and under the theory of respondeat superior, by the common law duty to use ordinary and reasonable care under the circumstances except for a few exceptions not applicable here.

Indiana statute grants the authority to establish streets to municipalities. Ind. Code § 36–9–2–5. The establishment of new public streets as part of subdivision improvements is completed upon the approval and recording of the final plat. Ind.Code § 36–7–3–3. This statutory scheme for obtaining approval and the recording of the final plat of a subdivision was adopted by the Town of St. John when St. John approved and promulgated zoning ordinances. Specifically, on February 9, 1976, St. John, pursuant to Indiana Code section 36–7–4–500, et seq., adopted Zoning Ordinance 433, which contained regulations for the creation and establishment of subdivisions. R. 276–356. Ordinance 433 was later replaced by St. John's adoption of Zoning Ordinance 841. R. 115–251.

■ In early October of 1990, the final plat of the Mallard Landing subdivision was approved by the Town of St. John's Plan Commission. R. 358–62. Thereafter, the Plan Commission submitted the final plat to St. John, which approved and endorsed it on October 8, 1990. R. 380. Consequently, the final plat was recorded in the county recorders's office on October 12, 1990. R. 367. The Indiana Supreme Court has held that the recording of the final plat is notice to the world of the dedication of a public street. *Northern Indiana Pub. Serv. Co. v. McCoy*, 239 Ind. 301, 307, 157 N.E.2d 181, 184 (1959); *Wischmeyer v. Finch*, 231 Ind. 282, 286, 107 N.E.2d 661, 663 (1952).

■ Moreover, the lots were later sold and conveyed by the developers after the final plat of the Mallard Landing subdivision was duly recorded. R. 370–71. When a plat is made and recorded and real estate is sold pursuant to that plat, the public streets noted on the plat are irrevocably dedicated. *City of Logansport v. Dunn*, 8 Ind. 378, 1856 WL 3803 (1856); *City of Cannelton v. Lewis*, 123 Ind.App. 473, 477, 111 N.E.2d 899, 901 (1953). The approved and recorded final plat for the Mallard Landing subdivision designates Mallard Lane as a public street, with the street ending in a cul-de-sac. R. 368. Thus, Mallard Lane was dedicated as a public street almost two years prior to the plaintiffs' accident on February 25, 1992.

■ We believe that when Mallard Lane became a dedicated public street, the exclusive right to regulate and the duty to maintain the street rested with the governmental unit. We recognize that the primary control of public streets in a city or town lies with the state, and any such power or control as municipalities may have are only such as may have been delegated. *Larson v. Town of Wynnedale*, 133 Ind.App. 337, 342, 179 N.E.2d 578, 580 (1962). However, the Indiana General Assembly delegated this authority to the local political subdivisions, which includes the Town of St. John and any affiliated entity that acts on the Town's behalf. *See* Ind.Code § 36–9–2–7. The Indiana Supreme Court has held that legislative delegation of power to control and regulate streets imposes on municipal corporations the duty to keep streets and alleys open and in safe condition for public travel. *House–Wives League v. City of Indianapolis*, 204 Ind. 685, 185 N.E. 511, 513 (1933). Moreover, Indiana appellate courts have long recognized a general duty on the part of the state, counties, and municipalities to exercise reasonable care in the design, construction, maintenance, and repair of the roads and highways within their control. *Miller v. Indiana State Highway Dep't*, 507 N.E.2d 1009, 1012 (Ind.Ct.App. 1987).

Thus, we believe St. John had a duty to the general public, including the plaintiffs, to use reasonable care in the design, con-

struction, and maintenance of Mallard Lane, and to "regulate the use of the public ways" by posting street signs, erecting lights, or installing warning devices to notify the general public that Mallard Lane ended in a cul-de-sac. Because St. John had a duty to the plaintiffs, and this duty does not fit within one of the limited circumstances in which the governmental unit may invoke common law sovereign immunity, we believe that the trial court properly denied St. John's motion for summary judgment.

### III. Contributory Negligence

St. John also contends that the trial court erred when it denied its motion for summary judgment because Lambert was contributorily negligent as matter of law. We disagree.

■■■■ Because we have determined that St. John is a governmental unit, we must now examine whether the common law defense of contributory negligence defeats the plaintiffs' claims. Tort claims against governmental units such as St. John are subject to the common law principle of negligence because Indiana's Comparative Fault Act does not apply to such entities. Ind.Code § 34–51–2–2; *Hapner v. State*, 699 N.E.2d 1200, 1205 (Ind.Ct. App.1998). Under such common law principles, any contributory negligence on the plaintiffs' part, however slight, will bar their claim against St. John, provided their negligence proximately contributed to their injuries. *See Sauders v. County of Steuben*, 693 N.E.2d 16, 18 (Ind.1998); *State v. Kallembach*, 452 N.E.2d 1027, 1030 (Ind.Ct.App.1983), *trans. denied.* The plaintiffs' contributory negligence will bar all recovery regardless of any negligence on the defendant's part. *Id.* Contributory negligence is an affirmative defense, and as such, the burden of proving it fell on St. John. *See Board of Comm'rs of Adams County v. Price*, 587 N.E.2d 1326, 1333 (Ind.Ct.App.1992), *trans. denied.* Moreover, the existence of contributory negligence is usually a question of fact for the jury unless the facts are undisputed

and only a single inference can be drawn therefrom. *Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1281 (Ind.Ct.App.1996).

We have previously enunciated the legal principles comprising the doctrine of contributory negligence in Indiana:

> Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection. A plaintiff must exercise the degree of care which an ordinary reasonable person would exercise in like or similar circumstances. In addition, the plaintiff's negligence must either be the proximate cause of the injury or proximately contribute thereto. Since the question of contributory negligence does not arise except in a case where it has been shown that the defendant was guilty of negligence which was the proximate cause of injury, a plaintiff's negligence need not be the sole proximate cause of the injury.

*Peavler*, 557 N.E.2d at 1080.

In the present case, St. John argues that there is no disputed issue of material fact that Lambert was contributorily negligent, and thus, it is entitled to summary judgment as a matter of law. R. 412. Specifically, St. John argues that Lambert committed negligence per se when he: 1) failed to keep a proper lookout while driving; 2) exceeded the posted speed limit; and 3) failed to reduce his speed as a result of the hazardous weather conditions. R. 413.

### A. Failure to Keep a Proper Lookout

■■■■ Generally, an Indiana motorist has a duty to keep and maintain a proper lookout when driving on a roadway. *State v. Eaton*, 659 N.E.2d 232, 236 (Ind.Ct.App. 1995), *trans. denied.* The Indiana Supreme Court has defined this duty as "the duty to see that which is clearly visible or which in the exercise of due care would be visible." *Thornton v. Pender*, 268 Ind. 540, 544, 377 N.E.2d 613, 617 (1978).

Lambert testified that he was unfamiliar with Mallard Lane, the road upon which he was traveling that night. R. 417. He further testified that when he drove off of the cul-de-sac into the ditch, he was looking at the houses on the left side of Mallard Lane in order to get a bearing on his location.[9] *Id.* However, we do not believe that the undisputed facts indicate with certainty that Lambert was negligent in operating the motor vehicle on Mallard Lane. A reasonable person, when lost, would briefly divert his attention from the road in order to get a bearing on his present location. Moreover, the plaintiffs' cause of action against St. John is based on St. John's failure to provide warning devices or properly illuminate Mallard Lane in order that the general public would be notified that Mallard Lane ended in a cul-de-sac. R. 25–26. Thus, a genuine issue of material fact exists whether or not Lambert's failure to keep a proper lookout was contributory negligence.

### B. Exceeding the Speed Limit

■■■ With regard to speeding, Indiana statute prohibits a driver from exceeding thirty miles per hour in a residential area. Ind.Code § 9–21–5–2(1). Generally, the violation of a statutory duty constitutes negligence per se. *Rentschler v. Hall,* 117 Ind.App. 255, 261, 69 N.E.2d 619, 622 (1946). Mallard Lane appears to be situated in a residential district of the town of St. John.[10] Lambert testified that he was driving thirty or thirty-five miles per hour at the time of the accident. R. 661. Therefore, we believe that there is a genuine issue of material fact as to whether Lambert complied with the statutory requirements of Indiana code section 9–21–5–2(1), and whether noncompliance with this statute bars Lambert's claim against St. John.

### C. Weather Conditions

■■■ We also believe that there is a genuine issue of material fact as to whether Lambert drove his vehicle too fast for the weather and road conditions existing at the time of the accident. Indiana Code section 9–21–5–4(5) provides that "the driver of each vehicle shall … drive at an appropriate reduced speed … [w]hen special hazard exists … by reason of weather or highway conditions." Lambert testified that it was raining and the roads were slick on the night the accident occurred on Mallard Lane. R. 417. He further testified that he was traveling at thirty to thirty-five miles per hour at the time of the accident. R. 661. Based on the designated evidence, we cannot say that the evidence and the inferences therefrom lead only to the conclusion that Lambert operated a vehicle in violation of Indiana Code section 9–21–5–4(5), and was therefore contributorily negligent.

### IV. The Trial Court's Findings of Fact and Conclusions of Law

St. John argues that the trial court's findings of fact and conclusions of law rendered at the conclusion of the bench trial are erroneous and, thus, that the judgment entered in favor of the plaintiffs should be reversed. We disagree.

### A. Standard of Review

■■■ In entering judgment in favor of the plaintiffs, the trial court entered specific findings of fact and conclusions of law pursuant to a request by St. John. When a party has requested specific findings of fact and conclusions of law thereon pursuant to Indiana Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings.

---

9. Lambert testified that he "glanced" at the homes on the left side for "a little bit." R. 627.

10. We note that St. John not only failed to designate evidence to the trial court that the location of Mallard Lane where the accident occurred is a residential area subject to Indiana Code section 9–21–5–2(1), but also failed to designate evidence that the posted speed limit on Mallard Lane was thirty miles per hour.

*Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998). However, before affirming on a legal theory supported by the findings but not espoused by the trial court, the reviewing court should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn therefrom. *Id.*

In reviewing the judgment, we must first determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Ahuja v. Lynco Ltd. Medical Research,* 675 N.E.2d 704, 707 (Ind.Ct.App.1996), *trans. denied.* The findings and judgment will not be set aside unless they are clearly erroneous. *Culley v. McFadden Lake Corp.,* 674 N.E.2d 208, 211 (Ind.Ct.App. 1996). Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Ahuja,* 675 N.E.2d at 707. A judgment is clearly erroneous when it is unsupported by the findings of fact. *Id.* In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences therefrom, and we will not reweigh the evidence of assess witness credibility. *Id.*

### B. Findings of Fact

#### 1. On the Night of the Plaintiffs' Accident it was Semi-foggy [11]

St. John contends that the trial court erred in finding that it was semi-foggy on February 25, 1992, the night of the plaintiffs' accident. Lambert testified to the weather conditions on February 25, 1992, stating that it was "[m]isty, ... kind of rainy, misty out." R. 621. The trial court specifically found that "February 25, 1992, was a misty and semi-foggy night."

R. 503. We believe that this is a reasonable inference from the testimony of Lambert, and thus, the trial court's finding is not clearly erroneous. *See Ahuja,* 675 N.E.2d at 707.

#### 2. The Street Light Illuminated the Entire Area of the Cul-de-sac [12]

St. John also contends that the trial court erred in finding that "[t]here is no evidence that given the conditions that existed on that night, that the street light illuminated the entire area of the cul-de-sac." R. 505. This finding was apparently made in response to the plaintiffs' allegation in their complaint that "[o]n February 25, 1992, there were no ... lights ... to notify drivers that Mallard Drive ended in a cul-de-sac." R. 25. Charles Monix, the Public Works Director for the Town of St. John testified that on the night of the accident, a streetlight was operating at the far left end of the cul-de-sac. R. 715. He further testified that the streetlight was located about twenty-five feet from the cul-de-sac. R. 717–18.

In addition, Lambert testified that he did not see the cul-de-sac located at the end of Mallard Lane until he was fifty (50) or sixty (60) feet away from it. R. 660. Howard testified that she did not see the cul-de-sac located at the end of Mallard Lane until the accident. R. 679. She further testified that she did not see any streetlights on Mallard Lane. R. 695. Therefore, the evidence in the record and the inferences drawn therefrom support the trial court's finding that the streetlight did not illuminate the entire cul-de-sac located at the end of Mallard Lane.

### C. Conclusions of Law [13]

St. John contends that the trial court erred in making the following conclusion:

11. We note that St. John actually argues that the trial court found that it was "foggy," while the court's Findings of Fact state that it was "semi-foggy." R. 503.

12. This finding was placed in the Conclusion section of the trial court's Findings of Fact. R. 4.

13. St. John argues that the trial court's conclusions of law do not support its judgment because "St. John never had any reason to

[T]he Court finds that the burden is upon the Town of Saint John to prove that the Plaintiffs herein were contributorily negligent in causing the injuries for which they have complained. The Court finds that the Town of St. John has failed to carry said burden.

R. 505.

### 1. Howard Was Not Contributorily Negligent

St. John argues that Howard, as a passenger in the vehicle driven by Lambert, failed to exercise reasonable care for her safety because she consumed alcoholic beverages prior to the accident and was not attentive to her surroundings in order that she could safely direct Lambert home.

 Generally, an occupant of a vehicle is not required to be constantly on the lookout for unexpected danger. *Spratt v. Alsup*, 468 N.E.2d 1059, 1063 (Ind.Ct. App.1984). However, a passenger has some duty to maintain a proper lookout, which is to say, a passenger remains under a duty to exercise reasonable care. *Kavanagh v. Butorac*, 140 Ind.App. 139, 148, 221 N.E.2d 824, 829 (1966). Moreover, a passenger is required to exercise reasonable care for his own safety and will be barred from recovery if he voluntarily rides with a driver he knows to be intoxicated, reckless, incompetent, or unreasonably fails to warn the driver of danger which he discovers, or in the exercise of reasonable care should discover. *Goodhart v. Board of Comm'rs of County of Parke*, 533 N.E.2d 605, 610 (Ind.Ct.App. 1989). A passenger is required to use the degree of care for his own safety that an ordinary prudent person in like circumstances would use. *Id.* An occupant may have a duty to warn the driver of a danger of which the occupant is aware. *Id.* Nevertheless, an occupant may ordinarily rely on the assumption that the driver will exercise ordinary care and caution and need not generally keep a lookout for approaching danger. *Id.*

 The evidence adduced at trial indicated that Howard was generally more familiar with Northwest Indiana than Lambert, and that she directed Lambert home on the night of February 25, 1992. R. 648–49. However, Howard testified at trial that she was unfamiliar with Mallard Lane, and that she did not see the cul-de-sac at the end of the road until the accident. R. 679. She further testified that she had a mixed drink prior to the accident on Mallard Lane. R. 676. Moreover, Howard stated that she was sitting next to Lambert on the passenger's side of the truck prior to the accident, and was engaged in a conversation with Lambert prior to the accident. R. 677, 679.

There is no evidence that Howard had any basis under an objective standard as a reasonable person to know of the lack of warning signs or improper illumination of Mallard Lane. In addition, Howard had no actual knowledge prior to the accident that the cul-de-sac existed at the end of the Mallard Lane. Thus, the trial court's conclusion that Howard was not contributorily negligent is clearly not erroneous.

### 2. Lambert Was Not Contributorily Negligent

We also believe that the trial court did not err in concluding that Lambert was

suspect a problem with the light." Appellant's Brief at 13. This allegation of error is included in St. John's Issues Presented for Review, Summary of the Argument, and Argument sections of it's brief. Appellant's Brief at 1, 7–8, 13–14. However, St. John has wholly failed to provide any separate argument or authority supporting this contention. Our rules require that each allegation of error be followed by an argument which contains not only the contentions of the appellant, but also the reasons in support of the contentions, citations to the authorities relied upon, and "a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review." Ind. Appellate Rule 8.3(A)(7). St. John's failure to present a cogent argument in their brief waives this issue. *See Burnett v. Cincinnati Ins. Co.*, 690 N.E.2d 747, 749 (Ind.Ct.App. 1998).

not contributorily negligent. St. John did not carry its burden of proving that Lambert was contributorily negligent for: 1) failing to slow down because of the weather conditions; 2) failing to keep a proper lookout; and 3) exceeding the posted speed limit. Contributory negligence is an affirmative defense, and as such, the burden of proving it falls upon St. John. *See Board of Comm'rs of Adams County,* 587 N.E.2d at 1333.

The trial court concluded that:

[T]he proximate cause of the accident was the negligence of the Town of Saint John in failing to warn drivers that the street ended in a dead-end or erect any barriers at the end of the street.

R. 505. Under the common law principle of contributory negligence, St. John must prove that the plaintiffs' negligence proximately contributed to their injuries in order that the claim against St. John will be barred. *See Sauders v. County of Steuben,* 693 N.E.2d 16, 18 (Ind.1998).

In determining whether an act is the proximate cause of another's injury, this court considers whether the injury was a natural and probable consequence of the negligent act which, in the light of the attending circumstances, could have been reasonably foreseen or anticipated. *Goldsberry v. Grubbs,* 672 N.E.2d 475, 479 (Ind. Ct.App.1996). Thus, to be considered a proximate cause, the negligent act must have set in motion a chain of circumstances which, in natural and continuous sequence, lead to the resulting injury. *City of Portage v. Lindbloom,* 655 N.E.2d 84, 86 (Ind.Ct.App.1995), *trans. denied.* The policy underlying proximate cause is that we, as a society, only assign legal responsibility to those actors whose acts are closely connected to the resulting injuries, such that imposition of liability is justified. *Adams Township of Hamilton County v. Sturdevant,* 570 N.E.2d 87, 90 (Ind.Ct.App.1991), *trans. denied.*

The trial court found that "[t]here were no signs erected by the Town of Saint John warning of the dead end, nor was there a retaining barrier placed at the end of the cul-de-sac to protect drivers unfamiliar with the area" on February 25, 1992. R. 505. Charles Monix, the Public Works Director for the Town of St. John, testified at trial that only a speed limit sign existed on Mallard Lane prior to the accident. R.R. 596–98. He further testified that a guardrail was not installed at the end of Mallard Lane until after the plaintiffs' accident. Furthermore, evidence introduced at trial indicates that a guardrail or retaining wall was not present when the accident occurred on February 25, 1992. R. 521, 537, 541, 543. Because the court's finding was supported by evidence adduced at trial, we believe that the trial court's conclusion that Lambert was not contributorily negligent is clearly not erroneous.

### Conclusion

Based on the foregoing, we hold that the trial court properly denied St. John's motion for summary judgment because St. John was not entitled to judgment as a matter of law on the issue of sovereign immunity, and disputed issues of fact exist regarding whether Lambert was contributorily negligent as a matter of law. In addition, we hold that the trial court's findings of fact and conclusions of law are not clearly erroneous, and thus, the judgment entered in favor of the plaintiffs is proper.

Affirmed.

BROOK, J., and NAJAM, J., concur.